**Melissa A. GREGORY, Plaintiff,**

v.

**BANK ONE, INDIANA, N.A., Defendant.**

**No. IP00–0545–C–H/F.**

United States District Court, S.D. Indiana, Indianapolis Division.

May 14, 2002.

N. Sean Harshey, Attorney at Law, Indianapolis, IN, for plaintiff.

Elizabeth G. Russell, Krieg Devault LLP, Indianapolis, IN, for defendant.

**ENTRY AND ORDER on Defendant's Motion for Order Compelling Bank One to Produce Certain Information Under Seal etc. and Motion for Leave to File Additional Affirmative Defenses Under Seal (doc. no. 35).**

FOSTER, United States Magistrate Judge.

On March 25, 2002, the defendant, Bank One, Indiana, N. A., filed the above-entitled motion. It asked the Court to order it to submit under seal any information which it might have reported pursuant to 31 U.S.C. § 5318(g)(2) and 12 C.F.R. § 21.11 for an *in camera* review and, if the Court determined that such information is material to Bank One's defense in this case, to order Bank One to file any additional affirmative defenses under seal and to serve the plaintiff with the additional affirmative defenses. The Court granted the first part of Bank One's request and

ordered it to submit under seal any information that it might have reported pursuant to 31 U.S.C. § 5318(g)(2) and 12 C.F.R. § 21.11. Order of March 26, 2002 (doc. no. 36). Bank One filed "confidential documents" in response. (Doc. no. 37). This Entry and Order addresses Bank One's second request: to determine whether the information submitted "is material to Bank One's defense in this case" and, if so, to then order the filing of additional affirmative defenses under seal and to serve the plaintiff with the affirmative defenses.

Section 5318(g) of the Annunzio–Wylie Anti–Money Laundering Act ("Act"), 31 U.S.C. § 5318(g) requires financial institutions to report "any suspicious transaction relevant to a possible violation of law or regulation." 31 U.S.C. § 5218(g)(1). The United States Department of the Treasury promulgated implementing regulations, 12 C.F.R. § 21.11 ("Rule"), which requires national banks to file a uniform Suspicious Activity Report ("SAR") with the Financial Crimes Enforcement Network of the Department of the Treasury in four circumstances, 12 C.F.R. § 21.11(c). As relevant to this case, national banks are required to file a SAR "[w]henever the national bank detects any known or suspected Federal criminal violation ... committed or attempted against the bank or involving a transaction .... conducted through the bank, where the bank believes that it was either an actual or potential victim of a criminal violation ... or that the bank was used to facilitate a criminal transaction, and the bank has a substantial basis for identifying one of its ... employees ... as having committed or aided in the commission of a criminal act, regardless of the amount involved in the violation." 12 C.F.R. § 21.11(c)(1). The regulatory history suggests that, although this section requires reporting only to federal authorities, it is intended to require the reporting of violations of state law and regulations as well as federal. 61 F.R. 4332, 4334.[1]

The Act authorizes the Secretary to require financial institutions to report suspicious activity but without specifying whether the reports are to be made to state and local as well as federal authorities. The Rule requires SARs to be filed only with federal authorities as well, but it also states that "[n]ational banks are encouraged to file a copy of the SAR with state and local law enforcement agencies where appropriate." 21 C.F.R. § 21.11(e). The Rule also requires banks to "immediately notify, by telephone," an appropriate state or law enforcement authority "in situations involving violations requiring immediate attention." 21 C.F.R. § 21.11(d); 61 F.R. at 4335.[2]

1. "With respect to the suggestion that the OCC [Office of the Comptroller of the Currency] adopt a dollar threshold for insider violations, the OCC notes that insider abuse has long been a key concern and focus of enforcement efforts at the OCC. With the development of a new sophisticated and automated database, the OCC and law enforcement agencies will have the benefit of a comprehensive and easily accessible catalogue of known or suspected insider wrongdoing. When insiders are involved, even small-scale offenses—for example, repetitive thefts of small amounts of cash by an employee who frequently moves between banking organizations—may undermine the integrity of banking institutions and warrant enforcement action or criminal prosecution. Therefore, the OCC does not wish to limit the information it receives regarding insider wrongdoing."

2. "Section 21.11(d) also requires a bank to notify law enforcement authorities immediately in the event of an on-going violation.... It is not feasible, however, for the OCC to contemplate all of the circumstances in which it might be appropriate for a financial institution immediately to advise state and local law enforcement authorities. National banks should use their best judgment regarding when to alert these authorities regarding ongoing criminal offenses or suspicious activi-

The Act mandates that a financial institution that files a required report of a suspicious transaction pursuant to the Act or any other authority or that voluntarily reports a suspicious transaction "may not notify any person involved in the transaction that the transaction has been reported." 31 U.S.C. § 5218(g)(2). The Rule is narrower than the Act in its application but broader in its prohibition. It requires confidentiality only of SARs and their contents, not of other reports of suspicious activity, but it forbids all disclosures of SARs, not just disclosures to involved persons:

> Any national bank or person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed, citing this section, applicable law (*e.g.*, 31 U.S.C. 5318(g)), or both, and shall notify the OCC.

12 C.F.R. § 21.11(k). The Rule has been found to be consistent with the statute. *See, e.g., Weil v. Long Island Savings Bank,* 195 F.Supp.2d 383, 387–89 (E.D.N.Y.2001) (" 'since the production of SARs by a bank in response to a subpoena would invariably increase the likelihood that the "person involved in the transac-

tion" would discover or be notified that the SARs had been filed, ... the regulation is consistent and in harmony with the statute.' "). The Act and the Rule thus create an unqualified discovery and evidentiary privilege that cannot be waived by the reporting financial institution. *Lee v. Bankers Trust Co.,* 166 F.3d 540, 544 (2nd Cir.1999); *Weil,* at 389–90; 61 F.R. at 4336. The Rule's requirement of confidentiality applies only to the SARs themselves and the information contained therein, but not to their supporting documentation. 61 F.R. at 4336. The purpose for requiring notification to the Office of the Comptroller of the Currency of requests for SARs is to permit the O.C.C. to intervene in the litigation if appropriate. *Id.*

In its most far-reaching provision, the Act provides a "safe harbor" for financial institutions that report suspicious activity, immunizing them from all legal liability under federal, state, and local law, excepting only liability under the United States Constitution. 31 U.S.C. § 5318(g)(3) [3]; 12 C.F.R. § 21.11(*l*) [4]. The immunity applies whether the financial institution makes a required or volunteered report, 12 C.F.R. § 21.11(*l*); 61 F.R. at 4336 [5]; whether the report is made to federal, state, or local authorities, 61 F.R. at 4336; whether the

---

ties that involve money laundering or violate the BSA." 61 F.R. 4332, 4335.

**3.** "Any financial institution that makes a disclosure of any possible violation of law or regulation or a disclosure pursuant to this subsection or any other authority, and any director, officer, employee, or agent of such institution, shall not be liable to any person under any law or regulation of the United States or any constitution, law, or regulation of any State or political subdivision thereof, for such disclosure or for any failure to notify the person involved in the transaction or any other person or such disclosure."

**4.** "The safe harbor provision of 31 U.S.C. 5318(g) ... covers all reports of suspected or

known criminal violations and suspicious activities to law enforcement and financial institution supervisory authorities, including supporting documentation, regardless of whether such reports are required to be filed pursuant to this section or are filed on a voluntary basis."

**5.** "The Agencies are of the opinion that the broad safe harbor protection of 31 U.S.C. 5318(g)(3) includes any reporting of known or suspected criminal offenses or suspicious activities with state and local law enforcement authorities or with the Agencies and FinCEN, regardless of whether such reports are filed pursuant to the mandatory requirements of the OCC's regulations or are filed on a voluntary basis."

reported activity eventually turns out to be legal or illegal, *Lopez v. First Union National Bank of Florida*, 129 F.3d 1186, 1192 (11th Cir.1997) ("As the use of the adjective 'possible' [in 31 U.S.C. § 5318(g)(3)] indicates, a financial institution's disclosure is protected even if it ultimately turns out there was no violation of law"); and whether the report is made with or without a good faith investigation, *Lee*, 166 F.3d at 544[6].

Bank One contends that the Act and the Rule force it into a dilemma in this case: it might want to plead the Act's "safe harbor" as an affirmative defense[7] but "to the extent Bank One reported any transaction pursuant to this federal law, it is prohibited from disclosing this information, absent a Court order requiring Bank One to do so." (Motion, ¶ 4). It sought the advice of the O.C.C. and the O.C.C. apparently instructed Bank One to follow the present course: ask the Court to order Bank One to submit any non-disclosable information to the Court under seal; the Court reviews the information to see if it is relevant to a safe harbor defense; if so, the Court orders Bank One to file its safe harbor affirmative defense under seal and to serve the same on the plaintiff. (*Id.*, ¶ 5, 6).

■ Bank One and the O.C.C. mistakenly assume (or hope) that the Court may order a disclosure under the Act. There is no provision in the Act or the Rule allowing a court-order exception to the unqualified privilege. *See, Lee*, 166 F.3d at 544 ("even in a suit for damages based on disclosures allegedly made in an SAR, a financial institution cannot reveal what disclosures it made in an SAR, or even whether it filed an SAR at all"). Thus, the Court is not authorized to order or to permit Bank One to make any disclosure, sealed or unsealed, of any information which is privileged under the Act or the Rule, whether in the form of a copy of an SAR or other report submitted in support of an affirmative defense or in the form of a description of privileged information in the pleading of an affirmative defense. Quite the opposite: under the clear, unambiguous terms of the Act and the Rule, courts have an obligation to prevent disclosures of privileged information.[8] Therefore, Bank One's request to file additional affirmative defenses under seal—presumably because those defenses will disclose privileged information—and to serve the same on Mrs. Gregory must be denied. Moreover, we conclude that the Court's order which allowed Bank One to submit potentially privileged information under seal for an *in camera* review was improvidently granted. By separate order, the Order of March 26, 2002 (doc. no. 36) shall be vacated and Bank One's submission in compliance therewith, *viz.*, its "Confidential Documents, to be Viewed Only by the Judge of this Court or Pursuant to the Order of This Court" filed April 22, 2002 (doc. no. 37), shall be removed from the file and returned to Bank One.

■ This does not place Bank One in a dilemma or prevent its assertion of "safe harbor" immunity under 31 U.S.C. § 5318(g)(3). Bank One can assert the

---

**6.** *Contra, Lopez*, 129 F.3d at 1192–93.

**7.** Because Bank One's argument is based solely on the Act and the Rule, we presume that it anticipates asserting a "safe harbor" affirmative defense under the Act. At any rate, it suggested no other affirmative defense to which information privileged under the Act or Rule might be relevant.

**8.** To the extent that Bank One's sealed submission and any possible affirmative defenses pleading include information tending to disclose that an SAR was filed and the contents thereof, their exclusion is mandated both by the Rule and the Act. To the extent that they contain information tending to disclose any other non-SAR report of possible criminal violations, their exclusion would be required by the Act alone.

immunity without disclosing whether a report was in fact made: all that is required is to assert the immunity in response to any claim by the plaintiff for damages allegedly caused by report or disclosure which is immunized under the Act.

The plaintiff, Melissa Gregory, alleges that Bank One falsely and negligently accused her of stealing funds when she was working as a teller at Bank One's Mooresville's branch.[9] The following summary of Mrs. Gregory's allegations are taken from her Amended Complaint and Demand for Jury Trial ("Complaint") (doc. no. 27). On March 4, 1998, the branch's head teller first informed Mrs. Gregory that the Bank believed that $3,000 was missing from her teller drawer in connection with a customer's transaction she handled on February 28, 1998. Complaint, ¶¶ 2–5. Over the next few weeks, audits of her teller drawer were performed and the matter was investigated by branch officers and the bank's security department; Mrs. Gregory was repeatedly questioned about the missing funds and she was accused of theft by bank personnel. *Id.*, ¶¶ 5–8. On or about March 11, 1998, Mrs. Gregory was moved to another position at the branch that did not involve handling money, *id.*, ¶ 7, and in April she was transferred out of the branch to the bank's Telephone Banking Center because of the allegations of theft, *id.*, ¶ 9. In May, Mrs. Gregory was placed on unpaid leave from the Telephone Banking Center due to the allegations of theft. *Id.*, ¶ 10. The Center's supervisor promised Mrs. Gregory that she would be reinstated when and if she was cleared of wrongdoing. *Id.*, ¶ 11. In March or April, the bank made a felony theft report to the Mooresville Police Department alleging that Mrs. Gregory stole $3,000 from her teller drawer on February 28, 1998. *Id.*,

¶ 12. The Mooresville Police Department investigated the charges and interrogated Mrs. Gregory over the next few months. *Id.*, ¶ 13. On or about July 31, a felony warrant was sought for Mrs. Gregory's arrest, *id.*, ¶ 14, and she was arrested, booked, and released on bail, *id.*, ¶ 15. Mrs. Gregory's arrest, felony charge, "and the accusations of [her] employer were made public record" in Mooresville, Mrs. Gregory's hometown. *Id.*, ¶ 16. On August 11, 1999, the state of Indiana dropped its charge against Mrs. Gregory in a motion to dismiss, *id.*, ¶ 23, and the bank ceased efforts to obtain restitution from her since then and has not brought a civil action against her, *id.*, ¶ 24.

Mrs. Gregory asserts three causes of action. First she claims slander and defamation of character. She alleges that "defendant NBD Bank [*sic*], by its employees, communicated and broadcast false allegations of criminal wrongdoing both verbally and in written for [*sic*] to other individuals and the general public." Complaint, ¶ 26. The communications were false and defamatory and the bank's allegations of theft could have been easily discovered as false by a reasonable review of readily-available documents. *Id.*, ¶¶ 27 and 28.

Second, Mrs. Gregory claims that Bank One is liable for negligent hiring, training, supervision, and retention of management-level employees of the bank who (1) failed to discover the falsity of the accusations of theft by Mrs. Gregory, and (2) "were permitted to disseminate to the public accusations against an employee that could have ben found to be false with minimal study of available records...." Complaint, ¶¶ 31–34.

Third, Mrs. Gregory claims that Bank One breached the contract that was

9. The branch and the actors involved were actually affiliated with NBD bank before its acquisition by Bank One.

formed when the supervisor of the Telephone Banking Center promised Mrs. Gregory that she would be reinstated once she was cleared of wrongdoing and she, in reliance on the promise, sought only short-term employment. Complaint, ¶¶ 35–39. The bank has since terminated her from employment. *Id.,* ¶ 41.

Mrs. Gregory claims that Bank One's conduct caused her to suffer various injuries: loss of her job, loss of subsequent employment, incurrence of criminal defense expenses and fees, absence from work to attend criminal proceedings, and physical and emotional distress and humiliation. Her claims implicate the Act's safe harbor immunity to the extent that she alleges that her injuries were caused by Bank One reporting the alleged theft to local, state, or federal authorities.[10] Allegations that her injuries resulted from other conduct of the bank, including publication of its accusations of theft against Mrs. Gregory to the general public and terminating her employment, would not implicate the immunity. Careful parsing of the Complaint and perhaps further clarification of her claims and allegations through discovery is required. For example, Mrs. Gregory's direct allegation that the bank reported the theft to the Mooresville Police Department [11] obviously implicates the Act's immunity. However, her allegation that the bank "communicated and broadcast false allegations of criminal wrongdoing . . . to other individuals and the general public", Complaint, ¶ 26, is less clear. To the extent that she means that her injuries were caused by the bank's slanderous and libelous reports of theft to official authorities, rather than to the public, the safe harbor immunity would appear to be implicated.[12] Later, Mrs. Gregory

---

10. Dispositive constructions of the pleadings and rulings on claims and defenses are reserved to the district judge. This discussion of the plaintiff's claims is solely for the purpose of deciding the present non-dispositive motion.

11. "That during March or April 1998 defendant's employee Duane L. Beasley made a felony theft report to the Mooresville (Indiana) Police Department alleging that Mrs. Gregory had stolen three thousand dollars ($3,000.00) form her teller drawer on February 28, 1998;". Complaint, ¶ 12.

12. Similarly, whether the safe harbor immunity is implicated by Mrs. Gregory's allegation that her "arrest, felony criminal charge and the accusations of defendant's [sic] employer were made public record in Mrs. Gregory's hometown", Complaint, ¶ 16, depends on the extent to which she means that the bank itself published its accusations to the community and the extent to which she means that the facts surrounding her arrest became known as a result of the official report the bank made.

Although not part of her pleading, Mrs. Gregory's "Plaintiff's Request on Damages and Evidence in Support" further illuminates her allegations and indicates that she contends that she suffered injuries caused by Bank One reporting the suspected theft to law enforcement authorities:

In this case defendant bank, after finding what it believed to be a shortage in Mrs. Gregory's teller drawer, made false accusations against her and communicated these false accusations to law enforcement authorities. These law enforcement authorities—the Mooresville, Indiana Police Department and the Morgan County, Indiana Prosecuting Attorney's Office—did not have the specific knowledge of the banking industry and banking practices necessary to thoroughly investigate the allegation against the defendant. They therefore relied wholly upon the representation made by defendant bank. Defendant bank, however, had apparently done little or no investigation into the alleged disappearance of funds. The end result was Mrs. Gregory's dismissal and criminal prosecution for a crime that had never occurred.

Melissa Gregory was wrongfully disgraced, embarrassed and publicly humiliated in her small hometown. She was publicly labeled a thief and left unemployed due to the failure of defendant bank to review its own readily available documents. Mrs. Gregory spent over one year of her life

clearly alleges that "employees of defendant were permitted to disseminate to the public accusations against an employee that could have been found to be false with minimal study of available records". *Id.*, ¶ 34. To the extent, therefore, that she complains that Bank One slandered and libeled her directly to the public, and not to law enforcement authorities, § 5318(g)(3)'s immunity would not be implicated.

The Complaint, therefore, presents opportunities for Bank One to assert a § 5318(g)(3) immunity defense against any claims for damages allegedly caused by Bank One reporting Mrs. Gregory's suspected theft to law enforcement without Bank One having to prove or assert that any report was actually made and without filing affirmative defenses under seal. On the other hand, the Complaint also asserts claims for damages from other causes, such as Bank One's termination of her employment and its breach of agreement to reinstate her, which § 5318(g)(3) immunity would not cover.[13]

Bank One's motion for leave to file additional affirmative defenses under seal is denied. The Order (doc. no. 36) granting Bank One's motion for an order compelling it to submit certain information under seal has been reconsidered, will be vacated, and the sealed information will be removed from the file and returned to Bank One.

as an alleged felon as a result of defendant bank's misconduct in communicating libelous statements to law enforcement officials. (Plaintiff's Request on Damages and Evidence in Support (doc. no. 13), p. [3] ). Nowhere does Mrs. Gregory allege that she was injured by an SAR or any other report filed by Bank One with federal authorities.

**13.** We encourage Bank One to seek further specification of Mrs. Gregory's claims and allegations through detailed contentions discovery in order to permit it to effectively and efficiently assert any § 5318(g)(3) defenses.