PER CURIAM.
Petitioner, International Bank of Miami, seeks certiorari review of an October 2, *1189 2002 order granting respondent’s, Fleet National Bank f/k/a BankBoston (Fleet), motion to compel production of a Suspicious Activity Report (SAR)[1] in a lawsuit involving claims of investment fraud, conspiracy, and civil theft. Petitioner also seeks certiorari review of an October 31, 2002 order denying petitioner’s motion to vacate the trial court’s orders of February 1, 2001[2] and October 2, 2002 regarding the SAR. We grant the petition and quash the October 2, 2002 order and the October 31, 2002 order as it pertains to compelling the production of the SAR to respondent Fleet.
The underlying ease involves two consolidated circuit court cases involving virtually identical allegations that, with the exception of petitioner, all defendants, namely respondent Boston Securities, S.A. (BSEC), Mario Rossi, Eduardo Seuderi, Xavier Capdevielle, Patricio Pusso, and respondent Fleet, participated in a fraudulent investment scheme, orchestrated by defendant Pusso, pursuant to which millions of dollars of the plaintiffs’[3] funds were embezzled. Defendant Pusso opened and maintained an account at petitioner in the name of Boston Investment Holdings. The underlying cases include claims against the defendants for fraud, conspiracy, and civil theft. A single statutory claim is asserted against petitioner for an alleged violation of section 670.207(1), Florida Statutes, relating to the alleged improper acceptance of wire transfer payment orders.
On February 1, 2001, over petitioner’s objection, the trial court granted plaintiff/respondent Ami Shinitzky’s motion to compel production of the SAR prepared by petitioner pertinent to the account of Boston Investment Holdings. The order provided that Shinitzky could furnish copies of the SAR to plaintiff/respondent Michael Astel. The order further provided that the SAR was to be kept confidential and that its contents were not to be disclosed to anyone associated with Boston Investment Holdings or any other defendant without further order of the trial court. Despite its objection, petitioner produced the SAR, thereby fully complying with the order, and did not seek appellate review of the order.
Over a year and a half later, on October 2, 2002, again over petitioner’s objection, the trial court granted respondent Fleet’s motion to compel production of the SAR. The order required that petitioner produce the SAR previously produced by petitioner to Shinitzky, subject to the same confidentiality provisions in the trial court’s February 1, 2001 order. Subsequently, petitioner filed a motion to vacate the trial court’s February 1, 2001 and October 2, 2002 orders. Therein, petitioner alleged that federal law and regulations prohibited the disclosure of SARs or their content, even in the context of discovery in a civil lawsuit. For this proposition, petitioner cited Weil v. Long Island Savings Bank, 195 F.Supp.2d 383 (E.D.N.Y.2001), which was decided on August 22, 2001, after the issuance of the trial court’s February 1, 2001 order. Petitioner further maintained that the trial court was vested with the inherent authority to revisit the issue and vacate both orders. The trial court denied petitioner’s motion noting that petitioner *1190 complied with its February 1, 2001 order and did not seek appellate review of the order. The trial court stated that it would be unfair to respondent Fleet, who was the only party not to have seen the document, to be precluded from receiving a document that was produced to nine other parties eighteen months ago.
Initially, we find that any argument as to the production of the SAR pursuant to the trial court’s February 1, 2001 is waived as petitioner fully complied with the order and failed to seek appellate review of the order.
A non-final order for which no appeal is provided by Rule 9.130 is reviewable by petition for certiorari where the non-final order constitutes a departure from the essential requirements of law and thus causes material injury to the petitioner throughout the remainder of the proceedings below, effectively leaving no adequate remedy on appeal. Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987); Bared & Co., Inc. v. McGuire, 670 So.2d 153, 156 (Fla. 4th DCA 1996). Orders granting discovery have traditionally been reviewed by certiorari. Id. (citations omitted). See, e.g., Allstate Ins. Co. v. Boecher, 733 So.2d 993, 999 (Fla.1999).
The first inquiry is whether petitioner has made a prima facie showing of the element of irreparable harm in the entry of the October 2, 2002 order. If this is not met, then the appellate court lacks jurisdiction and will enter an order dismissing the petition. Bared & Co., 670 So.2d at 157. However, if this is met, then the next inquiry is whether the petition makes a prima facie showing that the order to be reviewed departs from the essential requirements of law. Id.
While it appears at first blush that petitioner would not suffer irreparable harm because the SAR has already been produced to nine other parties in the lawsuit, the unusual situation here is one of the cat being “half-in and half-out of the bag.” Further, the irreparable harm pertinent to petitioner involves the danger to the life of a bank employee generating the report and the potential loss of customers if SARs are deemed discoverable in civil litigation. Thus, despite the fact that the SAR has been produced to nine other parties, we find, under the facts of this case, that petitioner has established irreparable harm that cannot be remedied on appeal. Therefore, the next inquiry is whether the trial court departed from the essential requirements of law in entering the October 2, 2002 order.
Section 5318(g) of Title 31 of the United States Code provides for the reporting by financial institutions of suspicious transactions:
(1) In general. — The Secretary may require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation.
(2) Notification prohibited.—
(A) In general. — If a financial institution or any director, officer, employee, or agent of any financial institution, voluntarily or pursuant to this section or any other authority, reports a suspicious transaction to a government agency—
(I) the financial institution, director, officer, employee, or agent may not notify any person involved in the transaction that the transaction has been reported; and
(ii) no officer or employee of the Federal Government or of any State, local, tribal, or territorial government within the United States, who has any knowledge that such report was made may *1191 disclose to any person involved in the transaction that the transaction has been reported, other than as necessary to fulfill the official duties of such officer or employee.
SI U.S.C. § 5318(g) (2000).
The regulations implementing the reporting of suspicious transactions by banks are found at 31 C.F.R. § 103.18. These regulations provide, in pertinent part:
(a) General.
(1)Every bank shall file with the Treasury Department, to the extent and in the manner required by this section, a report of any suspicious transaction relevant to a possible violation of law or regulation....
[[Image here]]
(b) Filing procedures—
(1) What to file. A suspicious transaction shall be reported by completing a Suspicious Activity Report (“SAR”), and collecting and maintaining supporting documentation as required by paragraph
(d) of this section.
(2) Where to file. The SAR shall be filed with FinCEN in a central location, to be determined by FinCEN, as indicated in the instructions to the SAR.
(3) When to file. A bank is required to file a SAR no later than 30 calendar days after the date of initial detection by the bank of facts that may constitute a basis for filing a SAR....
[[Image here]]
(e) Confidentiality of reports; limitation of liability. No bank or other financial institution, and no director, officer, employee, or agent of any bank or other financial institution, who reports a suspicious transaction under this part, may notify any person involved in the transaction that the transaction has been reported. Thus, any person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR, except where such disclosure is requested by FinCEN or an appropriate law enforcement or bank supervisory agency, shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed citing this paragraph (e) and 31 U.S.C. 5318(g)(2), and shall notify Fin-CEN of any such request and its response thereto....
31 C.F.R. § 103.18(a),(b),(e)(2002)(empha-sis added).
While all financial institutions are subject to 31 U.S.C. § 5318, the regulations promulgated thereunder applicable to savings associations and service corporations are found at 12 C.F.R. § 563.180. Like the regulations found at 31 C.F.R. § 103.18, these regulations contain a confidentiality provision that provides that “SARs are confidential. Any institution or person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed, citing this paragraph (d), applicable law (e.g., 31 U.S.C. 5318(g)), or both, and shall notify the OTS [Office of Thrift Supervision].” 12 C.F.R. § 563.180(d)(12)(2002) (emphasis added).
In Weil v. Long Island Savings Bank, 195 F.Supp.2d 383 (E.D.N.Y.2001), bank borrowers sued the defendant bank in connection with a purported illegal kickback scheme involving the bank’s chief executive officer. 195 F.Supp.2d at 385. The plaintiffs moved to compel production of any SAR regarding the bank’s CEO that had been filed by the bank with the Office of Thrift Supervision. The court held that 12 C.F.R. § 563.180(d)(12) prohibited the disclosure of SARs or their content, even *1192 in the context of discovery in a civil lawsuit, and that the enabling legislation was specific enough to support that purpose. Id. at 389. The court further found that 12 C.F.R. § 563.180(d)(12) created an unqualified discovery and evidentiary privilege that could not be waived by the reporting financial institution. Id.
Facing a similar situation as here because of the disclosure of the instant SAR to nine other parties, the Weil court stated that a “policy of strict confidentiality is intended to support the ostensible goal of the Annunzio-Wylie Anti-Money Laundering Act, that is, to encourage financial institutions to report suspicious activity without fear of reprisal, and/or to protect the people who are the subject of the SARs.” Id. at 390. In the same breath, the Weil court recognized that the facts of the case made the application of the confidentiality requirement artificial because it was apparent that everyone involved knew that a SAR was filed, and, given the CEO’s criminal prosecution and guilty plea, his reputation was not of serious concern. Id. Nonetheless, the court concluded that the SAR may contain information about other individuals that had not been made public, and, in any event, the plain language of the regulation required it to deny the production of the SAR itself. Id.
Subsequent to the Weil decision, Gregory v. Bank One, Indiana, N.A., 200 F.Supp.2d 1000 (S.D.Ind.2002) was decided. Therein, the court addressed a situation where a bank that was a defendant in a civil lawsuit sought to disclose its own filing of a SAR. The plaintiff was a bank employee who asserted defamation and related claims against the bank arising from the bank’s accusations of theft on the part of the employee. The bank sought leave of court to submit, under seal for in camera review, any information that it might have reported pursuant to 31 U.S.C. § 5318(g)(2) in support of an affirmative safe harbor immunity defense. While the court initially granted the bank’s request, upon reconsideration, it vacated its order and returned to the bank the materials it had produced. The court explained:
There is no provision in the Act or the Rule allowing a court-order exception to the unqualified privilege. See, Lee, 166 F.3d at 544 (“even in a suit for damages based on disclosures allegedly made in an SAR, a financial institution cannot reveal what disclosures it made in an SAR, or even whether it filed an SAR at all”). Thus, the Court is not authorized to order or to permit Bank One to make any disclosure, sealed or unsealed, of any information which is privileged under the Act or the Rule, whether in the form of a copy of an SAR or other report submitted in support of an affirmative defense or in the form of a description of privileged information in the pleading of an affirmative defense. Quite the opposite: under the clear, unambiguous terms of the Act and the Rule, courts have an obligation to prevent disclosures of privileged information.
200 F.Supp.2d at 1003 (emphasis added).
Given the particular facts of this case, we conclude that the trial court departed from the essential requirements of the law in compelling petitioner to produce the SAR to respondent Fleet. Therefore, we grant the petition and quash the October 2, 2002 order and the October 31, 2002 order as it pertains to compelling the production of the SAR to respondent Fleet. As to the trial court’s February 1, 2001, we note, however, that the last part of the order provides that the SAR be kept confidential and not be disclosed to anyone associated with Boston Investment Holdings or any other defendant without further order of the trial court. Because the *1193 last part of the sentence may properly give rise to respondents Fleet’s and BSEC’s concern that the plaintiffs may try to modify the February 1, 2001 order so as to use the SAR in a pre-trial, trial, or post-trial proceeding, the trial court needs to approach any such future dissemination with caution.
GRANTED in part and DENIED in part.
FARMER, C.J., WARNER and POLEN, JJ., concur.

.SARs are documents generated by banks, as mandated by federal law, that report any suspicious transaction relevant to a possible violation of law or regulation. See 31 C.F.R. § 103.18(a)(1).

. On February 1, 2001, the trial court granted plaintiff/respondent Ami Shinitzky’s motion to compel production of the SAR.

. Ami Shinitzky, Michael Astel, Amnon and Yael Idelson, Hyla Cass, William and Patricia Miller, Shmuel Shapira, and Jeanette Wilson.