**WHITNEY NATIONAL BANK, Plaintiff,**

v.

**Jerome KARAM, Tom Trammell, David Ranostaj, Defendants.**

No. CIV.A. H–02–2250.

United States District Court, S.D. Texas, Houston Division.

Feb. 20, 2004.

Yasmin Islam Atasi, Winstead Sechrest et al., Teresa Letson Schneider, Winstead Sechrest & Minick, Houston, TX, William T. Finn, Carver Darden et al., New Orleans, LA, for Whitney National Bank, plaintiff.

Arnold Anderson Vickery, Arnold Anderson et al., Houston, TX, Michael Reese Davis, Sharp Henry et al., Baton Rouge, LA, Russell "Rusty" Hardin, Jr., Rusty Hardin and Associates, Thomas Duncan Kennedy, Johnson Findel et al., Houston, TX, for defendants.

David Ranostaj, Friendswood, TX, pro se.

Timothy M. McDaniel, McDaniel & Allen, Houston, TX, for movant.

## MEMORANDUM AND OPINION GRANTING PLAINTIFF AND THIRD–PARTY DEFENDANTS' MOTION FOR PROTECTION

ROSENTHAL, District Judge.

Defendants, counterclaimants, and third-party claimants Jerome Karam and Tom Trammell (together, "defendants") have alleged that Whitney National Bank and its employees, John C. Hope, III, Louis Dubos, and Phillip Whitham (collectively, the "Whitney Bank Parties") defamed them by accusing them of illegal lending activity. Defendants seek discovery into the information the Whitney Bank Parties provided to government agencies and officials, including the FBI or the Department of Justice, concerning suspected illegal conduct on the part of Karam or Trammell. The Whitney Bank Parties move for protection against such discovery. (Docket Entry No. 66). The Whitney Bank Parties specifically ask for protection against discovery into whether they made any criminal referrals or filed any suspicious activity reports ("SARs") to or with any law enforcement or governmental agencies pertaining to any of the facts made the basis of this suit. (*Id.*, ¶ 3). The Whitney Bank Parties also seek protection against discovery into information exchanged between the Whitney Bank Parties and any governmental agency or entity pertaining to this lawsuit or to the facts made the basis of this lawsuit. (*Id.*). The Office of the Comptroller of the Currency (OCC) has filed an amicus curiae brief in support of the protective order. (Docket Entry No. 67). The United States has similarly moved for a protective order. (Docket Entry No. 60).

In response, Karam acknowledges that he could not properly obtain from the Whitney Bank Parties any SARs that they might have filed. (Docket Entry No. 69, p. 2). Karam asks that any other contacts between the Whitney Bank Parties and government agencies or officials pertaining to this lawsuit or to the facts made the basis of this lawsuit be produced in discovery. (*Id.*).

This court has carefully considered the motions for protection, the related briefs,

the response, the record, and the applicable law. Based on that review, this court GRANTS the motions for protection against discovery into any SARs filing and into communications and information exchanged between the Whitney Bank Parties and law enforcement or governmental officials or agencies pertaining to suspected illegal activities relating to or arising out of defendants' activities and transactions at Whitney Bank made the basis of this suit and any preliminary, preparatory, follow-up, or related communications. The reasons are set out below.

In 1992, Congress passed the Annunzio–Wylie Act, which gave the Secretary of the Treasury the power to require banks and other financial institutions to report suspicious transactions to the appropriate authorities and contained other provisions with respect to the mandatory or voluntary disclosure of suspicious activities. In order to encourage financial institutions to report possible criminal activity, the Act gave financial institutions and their officers, employees, and agents immunity from suit based on their having reported or disclosed a possible crime. 31 U.S.C. § 5318(g)(3). The regulations that the Secretary of the Treasury promulgated under the statute specifically require SARs to be filed whenever a financial institution detects "any known or suspected Federal criminal violation, or pattern of criminal violations, committed or attempted against the bank or involving a transaction or transactions conducted through the bank ... where the bank believes that it was either an actual or potential victim of a criminal violation, or series of criminal violations, or that the bank was used to facilitate a criminal transaction," and (1) a bank insider was involved; (2) over $5,000 was involved, and the bank can identify a suspect; (3) over $25,000 was involved, but the bank cannot identify a suspect; or (4) over $5,000, as well as potential money laundering or violations of the Bank Secrecy Act, were involved. 12 C.F.R. § 21.11(c). A financial institution must file a SAR within thirty days after it first detects certain facts that lead it to suspect such a criminal violation and, in some situations, must immediately notify its regulator and appropriate law enforcement agencies by telephone, in addition to filing a SAR. 12 C.F.R. § 21.11(d).

The Second Circuit has held that "[t]he plain language of the safe harbor provision describes an unqualified privilege," one that "does not limit protection to disclosures based on a good faith belief that a violation has occurred." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544–45 (2d Cir. 1999). The Eleventh Circuit reached a different conclusion in *Lopez v. First Union Nat'l Bank,* 129 F.3d 1186, 1195 (11th Cir.1997), finding a good faith belief requirement in the language of the statute. Since *Lopez* was decided, it has been the subject of significant criticism. *See, e.g., Gregory v. Bank One Corp.,* 200 F.Supp.2d 1000, 1003 (S.D.Ind.2002); *Stoutt v. Banco Popular de Puerto Rico,* 158 F.Supp.2d 167, 175 (D.P.R.2001). Courts have noted that the disclosure of a SAR could compromise an ongoing law enforcement investigation, provide information to a criminal wishing to evade detection, or reveal the methods by which banks are able to detect suspicious activity. *See, e.g., Cotton v. PrivateBank and Trust Co.,* 235 F.Supp.2d 809, 815 (N.D.Ill.2002); *Youngblood v. Comm'r,* 2000 WL 852449, *11–12 (C.D.Cal.2000). Courts have also observed that a bank may be reluctant to prepare a SAR if it believed that its cooperation may cause customers to retaliate. *See, e.g., Cotton,* 235 F.Supp.2d at 815. Courts have also expressed concern that the disclosure of a SAR could harm the privacy interests of innocent people whose names may be mentioned. *See, e.g., id.; Weil v. Long Island Savs. Bank,* 195 F.Supp.2d 383, 388 (E.D.N.Y.2001) ("the production

of SARs by a bank in response to a subpoena would invariably increase the likelihood that the person involved in the transaction would discover or be notified that the SARs had been filed") (internal citations and quotations omitted). Since *Lopez,* the same court has held that a bank that discloses account records under a facially valid subpoena is immune from any lawsuit arising from its disclosures. *Coronado v. Bank Atlantic Bancorp, Inc.,* 222 F.3d 1315, 1322 (11th Cir.2000).

The statute was amended expressly to prohibit a financial institution from disclosing the existence of SARs or other report of a suspicious transaction to a government agency. As amended, 31 U.S.C. § 5318(g) states as follows:

(g) Reporting of suspicious transactions.–

(1) In general.–The Secretary may require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation.

(2) Notification prohibited.–

(A) In general.–If a financial institution or any director, officer, employee, or agent of any financial institution, voluntarily or pursuant to this section or any other authority, reports a suspicious transaction to a government agency–

(i) the financial institution, director, officer, employee, or agent may not notify any person involved in the transaction that the transaction has been reported; and

(ii) no officer or employee of the Federal Government or of any State, local, tribal, or territorial government within the United States, who has any knowledge that such report was made may disclose to any person involved in the transaction that the transaction has been reported, other than as necessary to fulfill the official duties of such officer or employee.

31 U.S.C. § 5318(g)(1), (2).

The statute also provides a safe harbor from civil liability for financial institutions making the required disclosures:

(3) Liability for disclosures.-

(A) In general.–Any financial institution that makes a voluntary disclosure of any possible violation of law or regulation to a government agency or makes a disclosure pursuant to this subsection or any other authority, and any director, officer, employee, or agent of such institution who makes, or requires another to make any such disclosure, shall not be liable to any person under any law or regulation of the United States, any constitution, law, or regulation of any State or political subdivision of any State, or under any contract or other legally enforceable agreement (including any arbitration agreement), for such disclosure or for any failure to provide notice of such disclosure to the person who is the subject of such disclosure or any other person identified in the disclosure.

31 U.S.C. § 5318(g)(3).

The accompanying regulation states that a bank or person requested to disclose a SAR or the information contained in a SAR must notify the OCC and must "decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed . . . ." 12 C.F.R. § 21.11(k). The regulations further provide:

(*l*) Safe harbor. The safe harbor provision of 31 U.S.C. 5318(g), which exempts any financial institution that makes a disclosure of any possible violation of law or regulation from liability under any law or regulation of the United States, or any constitution, law, or regulation of any state or political subdivision, covers all reports of suspected or

known criminal violations and suspicious activities to law enforcement and financial institution supervisory authorities, including supporting documentation, regardless of whether such reports are required to be filed pursuant to this section or are filed on a voluntary basis. 12 C.F.R. § 21.11(*l*).

The regulation is broader in its prohibition against disclosure of the existence or content of a SAR than is the statute. Title 31 U.S.C. § 5318(g), as implemented by 12 C.F.R. § 21.11(k), creates an unqualified discovery and evidentiary privilege that courts have held cannot be waived. *See Gregory,* 200 F.Supp.2d at 1002 (citing *Lee,* 166 F.3d at 544) ("even in a suit for damages based on disclosures allegedly made in an SAR, a financial institution cannot reveal what disclosures it made in an SAR, or even whether it filed an SAR at all"), and *Weil,* 195 F.Supp.2d at 389–90 (observing that SAR confidentiality privilege is neither qualified nor subject to waiver by the financial institution). A court is not authorized to order the disclosure of a SAR under the Act.

■ In this case, defendants have disavowed any desire to discover the existence or contents of a SAR, but seek all communications between the Whitney Bank Parties and law enforcement or government agencies relating to the defendants or their transactions or activities at Whitney Bank. The line defendants seek to draw is not one the cases recognize. Under the cases applying the statute and regulations, a court should protect against discovery into information that would reveal that a report of a suspicious transaction to a government agency has been prepared or filed or would reveal its contents. The cases have read this prohibition as extending to whether a SAR or other report of suspicious transaction to a governmental agency exists; whether such a report is being prepared or has been filed; and the con-

tents of such a report or the information contained therein. Courts have, however, allowed the production of supporting documentation that was generated or received in the ordinary course of the bank's business, on which the report of suspicious activity was based. *See Weil,* 195 F.Supp.2d at 389 ("The privilege is, however, limited to the SAR and the information contained therein; it does not apply to the supporting documentation."); *Cotton,* 235 F.Supp.2d at 815 (observing two types of supporting documents, including "factual documents which give rise to suspicious conduct [and which] must be produced in the ordinary course of discovery because they are business records made in the ordinary course of business," and "documents representing drafts of SARs or other work product or privileged communications that relate to the SAR itself" and should not "be produced because they would disclose whether a SAR has been prepared or filed"); *U.S. v. Holihan,* 248 F.Supp.2d 179, 187 (W.D.N.Y.2003); *In re Mezvinsky,* 2000 Bankr.LEXIS 1067, *8–9 (E.D.Pa.2000).

■ In this case, while defendants disavow any interest in the production of SARs filed by the Whitney Bank Parties with governmental agencies or officials, the statute and regulation protects a broader range of communications from production. The statute and regulations prohibit disclosure, and the immunity provisions make the information irrelevant. The Whitney Bank Parties are protected from the production of communications they made to governmental agencies or officials reporting possible or suspected violations of laws or regulations by the defendants, or pertaining to such reports. Such communications may consist of a SAR itself; communications pertaining to a SAR or its contents; communications preceding the filing of a SAR and prepara-

tory or preliminary to it; communications that follow the filing of a SAR and are explanations or follow-up discussions; or oral communications or suspected or possible violations that did not culminate in the filing of a SAR. The Whitney Bank Parties must produce documents produced in the ordinary course of business pertaining to the defendants' banking activities, transactions, and accounts, but may not produce documents or information that could reveal whether a SAR or other report of suspected or possible violations has been prepared or filed or what it might contain, or the discussions leading up to or following the preparation or filing of a SAR or other form of report of suspected or possible violations.

The motions for protection are granted.