PER CURIAM.
 

 Petitioner, Regions Bank [“Bank”], as successor in interest to AmSouth Bank, seeks certiorari review of an order of the trial court compelling it to produce certain documents, which Bank claims are privileged. Because the order is inadequate to prevent the disclosure of privileged documents, we grant the writ.
 

 An action was brought against Bank, Ameriprise Financial Services, Christopher Coulther, who is an Ameriprise financial adviser, and Thomas Romanac, who is an Ameriprise employee, by ninety-nine plaintiffs. Each of the plaintiffs is an investor who was persuaded by Coulther to invest in real estate in Costa Rica. The current petition involves an order of the trial court requiring Bank to provide discovery to these ninety-nine plaintiffs.
 

 
 *74
 
 As to Bank, plaintiffs have asserted five claims: negligence and gross negligence, breach of contract, breach of fiduciary duty, aiding and abetting fraud, and statutory securities violations. Plaintiffs served Bank with an extensive request for production of documents.
 

 In response to the production requests, Bank asserted:
 

 Bank also objects to this Request because it seeks documents, if any exist, barred from disclosure or discussion by federal law, including but not limited to, 12 C.F.R. § 21.11 and 31 U.S.C. § 5318(g).
 

 The essential function of 31 U.S.C. § 5318(g) is to require financial institutions to report “suspicious transactions”— those that may relate to a violation of any law or regulation.
 
 [1]
 
 This legislation is implemented by 12 C.F.R. § 21.11, which provides for the creation, filing and use of “suspicious activity reports” [“SARs”]. Among its provisions is a requirement of confidentiality for the SAR, even including whether one has been prepared or filed. It is the position of Bank that it cannot even acknowledge whether documents protected by 31 U.S.C. § 5318(g) exist.
 

 On February 3, 2009, in response to Bank’s objections, plaintiffs filed a Motion and Memorandum to Compel Production of Documents by Regions Bank [“Motion to Compel”] in which they sought production of “investigatory” material. The investigatory material includes internal emails and communications addressing accounts containing investor funds for the Costa Rica investments. Plaintiffs assert this material is relevant and not privileged. Plaintiffs even claim that the SARs are no longer confidential, but, even if the SARs are still protected, Bank is not free to refuse to produce its “investigatory” and compliance files simply because a SAR may or may not have been contemplated or issued.
 

 After a hearing, the trial court determined that any SAR, to the extent it exists, is privileged and not to be produced by Bank. Second, as to any documents supporting a SAR, if it exists, the trial court compelled Bank to produce them, but with SAR references redacted.
 
 [2]
 
 It is Bank’s position that federal law protects such supporting documents from being produced and that redacting any reference to SARs from supporting documents is not sufficient to comply with federal law.
 

 Federal courts have interpreted 31 U.S.C. § 5318(g) to mean that SARs themselves are not discoverable, but facts giving rise to the filing of a SAR are discoverable, if those facts are available in a document created in the ordinary course of the bank’s business.
 
 See Lee v. Bankers Trust Co.,
 
 166 F.3d 540, 544 (2d Cir.1999);
 
 U.S. v. Holihan,
 
 248 F.Supp.2d
 
 *75
 
 179, 186-87 (W.D.N.Y.2003);
 
 Weil v. Long Island Sav. Bank,
 
 195 F.Supp.2d 388, 387-88 (E.D.N.Y.2001);
 
 Bank of China v. St. Paul Mercury Ins. Co.,
 
 2004 WL 2624673, *5-6, 2004 U.S. Dist. LEXIS 23364, *16-17 (S.D.N.Y. Nov. 18, 2004).
 

 In
 
 Whitney National Bank v. Karam,
 
 306 F.Supp.2d 678, 682 (S.D.Tex.2004), the federal district court explained:
 

 The regulation is broader in its prohibition against disclosure of the existence or content of a SAR than is the statute. Title 31 U.S.C. § 5318(g), as implemented by 12 C.F.R. § 21.11(k)
 
 [3]
 
 , creates an unqualified discovery and evidentiary privilege that courts have held cannot be waived.
 
 See Gregory v. Bank One,
 
 200 F.Supp.2d 1000, 1002
 
 (citing Lee v. Bankers Trust,
 
 166 F.3d 540, 544) (“even in a suit for damages based on disclosures allegedly made in an SAR, a financial institution cannot reveal what disclosures it made in an SAR, or even whether it filed an SAR at all”), and
 
 Weil,
 
 195 F.Supp.2d at 389-90 (observing that SAR confidentiality privilege is neither qualified nor subject to waiver by the financial institution). A court is not authorized to order the disclosure of a SAR under the Act.
 

 In this case, defendants have disavowed any desire to discover the existence or contents of a SAR, but seek all communications between the Whitney Bank
 

 Parties and law enforcement or government agencies relating to the defendants or their transactions or activities at Whitney Bank. The line defendants seek to draw is not one the cases recognize. Under the cases applying the statute and regulations, a court should protect against discovery into information that would reveal that a report of a suspicious transaction to a government agency has been prepared or filed or would reveal its contents. The cases have read this prohibition as extending to whether a SAR or other report of suspicious transaction to a governmental agency exists; whether such a report is being prepared or has been filed; and the contents of such a report or the information contained therein. Courts have, however, allowed the production of supporting documentation that was generated or received in the ordinary course of the bank’s business, on which the report of suspicious activity was based.
 

 Both parties also rely, in part, on an appellate opinion from California,
 
 Union Bank of California v. Superior Court,
 
 130 Cal.App.4th 378, 29 Cal.Rptr.3d 894 (2005). In that case, petitioner bank sought review of a trial court order compelling production of the bank’s internal SARs. The underlying action involved investors who alleged they had been defrauded by an in
 
 *76
 
 vestment scheme. The opinion offers a good description of the court opinions on this issue nationwide.
 

 [T]he prohibition against disclosing a SAR protects from discovery not just the SAR and its contents, but also information that would disclose preparation of a SAR.
 
 {See Whitney Nat. Bank v. Karam
 
 (S.D.Tex.2004) 806 F.Supp.2d 678, 682 {Whitney).) The federal statute, 31 U.S.C. § 5318(g), as implemented by regulation, 12 C.F.R. § 21.11(k), “creates an unqualified discovery and evidentiary privilege that courts have held cannot be waived. [Citations.].”
 
 (Whitney, supra,
 
 306 F.Supp.2d at p. 682.) Although the regulation is broader in its prohibition against disclosure of the existence or content of a SAR than is the statute, it has been held consistent and in harmony with the enabling statute. (U
 
 nited States v. Holihan
 
 (W.D.N.Y.2003) 248 F.Supp.2d 179, 186
 
 (Holihan); Weil v. Long Island Sav. Bank
 
 (E.D.N.Y.2001) 195 F.Supp.2d 383, 388-389 (Weil).)
 

 While the regulation prohibits disclosure of SAR’s and their contents, courts have uniformly held that “supporting documentation” underlying a SAR that, is generated or received in the ordinary course of a bank’s business is discoverable.
 
 {See Whitney, supra,
 
 306 F.Supp.2d at p. 682;
 
 Gregory v. Bank One Corp. Inc.,
 
 (S.D.Ind.2002) 200 F.Supp.2d 1000, 1002
 
 (Gregory); Holihan, supra,
 
 248 F.Supp.2d at p. 187;
 
 Cotton, supra,
 
 235 F.Supp.2d at p. 814;
 
 Weil, supra,
 
 195 F.Supp.2d at p. 389.) The trial court relied heavily on the distinction between SAR’s and supporting documentation in arriving at its holding, noting the regulations recognize a distinction between SAR’s and supporting documentation but afford confidential status only to SAR’s and their contents.
 

 These authorities confirm that documentation supporting a SAR is subject to discovery, but they beg the question of what comprises “supporting documentation.” The court in
 
 Cotton
 
 described two types of supporting documents: “The first category represents the factual documents which give rise to suspicious conduct. These are to be produced in the ordinary course of discovery because they are business records made in the ordinary course of business. The second category is documents representing drafts of SARs or other work product or privileged communications that relate to the SAR itself. These are not to be produced because they would disclose whether a SAR has been prepared or filed.”
 
 (Cotton, supra,
 
 235 F.Supp.2d at p. 815.) Thus, transactional and account documents such as wire transfers, statements, checks, and deposit slips are the types of documents generated in the ordinary course of business that are subject to discovery.
 
 {Id.
 
 at p. 814.) Such documents would be prepared regardless of whether a financial institution has an obligation to report suspicious activity to the federal government. By contrast, a draft SAR or internal memorandum prepared as part of a financial institution’s process for complying with federal reporting requirements is generated for the specific purpose of fulfilling the institution’s reporting obligation. These types of documents fall within the scope of the SAR privilege because they may reveal the contents of a SAR and disclose whether “a SAR has been prepared or filed.” (12 C.F.R. § 21.11(k) (2005).) Unlike transactional documents, which are evidence of suspi-
 
 *77
 
 eious conduct, draft SAR’s and other internal memoranda or forms that are part of the process of filing SAR’s are created to report suspicious conduct.
 

 Grafton Partners contends that reports of suspicious activity other than SAR’s are subject to discovery, citing
 
 Gregory, supra,
 
 200 F.Supp.2d 1000 (regulation “requires confidentiality only of SARs and their contents, not of other reports of suspicious activity....”).
 
 {Id.
 
 at p. 1002.) Likewise, the trial court held that not all reports of suspicious activity are covered by the SAR privilege, and it concluded a bank may not expand the SAR privilege to cover its internal reports just by merging its internal investigations with federal reporting obligations. The trial court reasoned the SAR privilege is primarily intended to protect the confidentiality of communications between financial institutions and federal authorities.
 

 We do not suggest that all reports of suspicious activity are protected by the SAR privilege. We are mindful that evidentiary privileges should be narrowly construed because they prevent otherwise admissible and relevant evidence from coming to light.
 
 (McKesson HBOC, Inc. v. Superior Court
 
 (2004) 115 Cal.App.4th 1229, 1236, 9 Cal.Rptr.3d 812.) Financial institutions may have risk management procedures in place for detecting suspicious activity wholly apart from their procedures for complying with federal reporting obligations. A bank may not cloak its internal reports and memoranda with a veil of confidentiality simply by claiming they concern suspicious activity or concern a transaction that resulted in the filing of a SAR.
 

 Union Bank of California,
 
 29 Cal.Rptr.3d at 901-03.
 
 [4]
 

 In the current case, the trial court sustained Region Bank’s objections on the basis of 12 C.F.R. § 208.62(j) and related regulations but only in that: (1) Bank need not produce any responsive SARs, and (2) it may redact from any requested document any reference to a SAR or any language disclosing whether there was or was not a SAR or whether a SAR was or will be prepared. The trial court correctly determined that Bank should not produce any SARs; however, the second ruling is too broad because redaction will not be adequate to protect the confidentiality of a SAR investigation or the fact of a SAR’s preparation. Redaction of a document does not change its character.
 

 We grant this writ reluctantly because it appears to us that the trial court has familiarized itself with the existing case law, is cognizant of the controlling principles concerning this specific statutory rule of confidentiality and because the order under review seeks a workable procedure that is not far off the mark. The trial court may also have suspected that Bank’s view of the scope of SAR confidentiality is over-broad and subject to misapplication. Nevertheless, we have become persuaded that redaction is inadequate to assure the requirements of the federal legislation and regulations are met. Rather, it will be necessary for the trial court to examine
 
 in camera
 
 any documents that may fall into a grey area of disclosure. Because these are not difficult concepts to apply, we ex
 
 *78
 
 pect that the documents about which Bank is truly in doubt will be few in number.
 

 WRIT GRANTED.
 

 GRIFFIN, ORFINGER and COHEN, JJ., concur.
 

 [1]
 

 .
 
 See generally
 
 Alex C. Lakatos & Mark G. Hanchet,
 
 Confidentiality of Suspicious Activity Reports,
 
 124 Banking L.J. 794 (2007).
 

 [2]
 

 . The written order of the trial court stated in pertinent part as follows:
 

 The Court sustains Region Bank’s objections on the basis of 12 C.F.R. § 208.62(j) and related regulations but only to the following extent: it need not produce any responsive suspicious activity reports (SARs), if any, and it may redact from any requested document any reference to a SAR or any language disclosing whether there was or was not a SAR or whether a SAR was or will be prepared. All other portions of the requested documents and all other requested documents shall be produced, notwithstanding any claim of confidentiality based upon the cited regulations.
 

 The order of the trial court also denied Bank's motion to stay production of documents pending the outcome of this petition, but this Court rendered an order staying the production of said documents.
 

 [3]
 

 3. 12 C.F.R. § 21.1 l(k) applies to national banks:
 

 Confidentiality of SARs. SARs are confidential. Any national bank or person subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed, citing this section, applicable law (e.g., 31 U.S.C. 5318(g)), or both, and shall notify the OCC.
 

 12 C.F.R. 208.62(j) applies to banks that are members of the federal reserve system:
 

 Confidentiality of SARs. SARs are confidential. Any member bank subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR shall decline to produce the SAR or to provide any information that would disclose that a SAR has been prepared or filed citing this section, applicable law (e.g., 31 U.S.C. 5318(g)), or both, and notify the Board.
 

 [4]
 

 . See also Int’l Bank of Miami, N.A. v. Shinitzky,
 
 849 So.2d 1188, 1192-93 (Fla. 4th DCA 2003).