UNITED STATES of America,

v.

Terri HOLIHAN, Defendant.

No. 02–CR–74E(F).

United States District Court, W.D. New York.

Jan. 13, 2003.

Phillips, Lytle, Hitchcock, Blaine & Huber, LLP, Preston L. Zarlock, of Counsel, Buffalo, NY, for HSBC Bank USA.

William G. Clauss, Federal Public Defender, Kimberly A. Schecter Assistant Federal Public Defender, of Counsel, Buffalo, NY, for Defendant.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This case was referred to the undersigned on June 13, 2002 by Honorable John T. Elfvin for all pretrial matters. The matter is presently before the court on HSBC Bank USA's motion filed November 15, 2002 to quash or modify a subpoena *duces tecum* served by Defendant (Doc. No. 13).

### BACKGROUND and FACTS

Defendant Terri Holihan is charged in a Grand Jury indictment ("the Indictment") with eleven separate violations of 18 U.S.C. § 656, *i.e.*, embezzlement by a bank employee of more than $1,000. Specifically Defendant, who for fourteen years was employed as a bank teller with HSBC Bank USA ("HSBC" or "the Bank") and its predecessor, Marine Midland Bank, is accused of embezzling, over a three day period between July 28 and 30, 1999, a total of $42,000 through fraudulent withdrawals from eleven separate Bank customers' accounts at the Bank's Eden, New York branch ("the Eden branch") where Defendant was then employed. The Government maintains Defendant embezzled the funds through a series of fraudulent computerized on-line bank account transactions by debiting the victims' bank accounts for a certain sum of money which Defendant then paid to herself in cash. The Eden branch's manager has been granted immunity from prosecution in return for her cooperation in the ensuing investigation which began in September 1989.

On October 28, 2002, Defendant served a subpoena *duces tecum* on HSCB pursuant to Fed.R.Crim.P. 17(c) (Doc. No. 22) ("the subpoena"), seeking documentary evidence which the Government maintains is in the Bank's possession.[1] On November 15, 2002, HSBC filed a Notice of Motion to

---

1. On September 26, 2002, Defendant filed a motion seeking various pretrial discovery from the Government Fed.R.Crim.P. 16(a)(1)(C). By Decision and Order filed December 6, 2002 (Doc. No. 20), the undersigned granted the motion, thereby ordering

quash or modify the subpoena (Doc. No. 13), attached to which is the Affidavit of Preston Zarlock, Esq. ("Zarlock Affidavit") and exhibits. HSBC also filed a Memorandum of Law of HSBC Bank USA in Support of Motion to Quash or Modify Subpoena *Duces Tecum* (Doc. No. 14) ("Bank's Memorandum"). In opposition to the motion to quash Defendant filed, on December 2, 2002, the Affirmation of Assistant Federal Public Defender Kimberly A. Schecter (Doc. No. 19) ("Schecter Affirmation"). On December 9, 2002, HSBC filed a Reply Memorandum of Law of HSBC Bank USA in Further Support of Motion to Quash or Modify Defendant's Subpoena *Duces Tecum* (Doc. No. 21) ("Bank's Reply Memorandum").

Oral argument was conducted on December 17, 2002 and decision was reserved. The parties advised the court during oral argument that only two of the requests contained in the subpoena remain at issue: (1) the complete personnel files of HSBC's investigator Raymond Pavicich and others employed at HSBC's Eden branch including Carol Banazak, Mary Lou Webb, Lynn Kruzka, Karen Lutz, Laura Bosinski, Mary Ann Frost, Diana

Quirk and Kathleen Zugger, as well as Defendant's own personnel file; and (2) the names and addresses for account holders of certain accounts other than those specified in the Indictment, including account numbers 4333821, 431325, 539151, 534230, 515944, 660456, 529155, 62139–6, 49957–4, 554737, 549296, 516754, 526827 and 864439113, along with any "referral slips" completed for these accounts in July 1999.[2] Based on the following, the Bank's motion to quash Defendant's subpoena *duces tecum* is DENIED and Defendant's alternative motion to modify Defendant's subpoena *duces tecum* is GRANTED.

### DISCUSSION

Defendant served the subpoena *duces tecum* pursuant to Fed.R.Crim.P. 17(c) which governs the use of subpoenas in criminal cases and provides that "[a] subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein." The Supreme Court has held that production of documents pursuant to Rule 17(c) is appropriate provided

(1) that the documents are evidentiary and relevant; (2) that they are not oth-

the Government to provide Defendant with any of the following material within its possession, including (1) the history of Defendant's bank computer terminal "sign on" and "sign off" times for the three month period ending July 30, 1999; (2) any Suspicious Activity Reports concerning others employed at the HSBC Eden branch in July 1999; (3) the Bank's operating procedures regarding attendance record-keeping and trash disposal; (4) any Bank logs showing the daily tally from July 28 to 30, 1999, of on-line computer entries compared to the number of bank transactions; (5) information regarding the frequency with which the number of Bank account withdrawal slips do not match the number of on-line transactions at the HSBC Eden branch; (6) all investigative information as to other Bank employees suggesting any motive to embezzle money or the making of unusual purchases or payments after July

30, 1999 and (7) certain relevant information distilled from FBI 302 reports containing information provided by Bank employees Kathleen Zugger and Laura Bosinski regarding the date and manner by which the HSBC Security Department was notified of the alleged embezzlement. Defendant's alternative motion to suppress evidence was dismissed as moot.

2. Defendant maintains, and the Government does not dispute, that one of her job duties at the Bank was to search the Bank's account data base for accounts with large balances and then to prepare referral slips referring the holders of such accounts to the Bank's marketing department which would then contact the account holders with information about additional Bank products that may be of interest to the account holders.

erwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

United States v. Nixon, 418 U.S. 683, 699, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (footnote omitted) (citing United States v. Iozia, 13 F.R.D. 335, 338 (S.D.N.Y.1952)).

█ Materials subpoenaed pursuant to Rule 17(c) need not actually be used in evidence provided they are subpoenaed in good faith. In re Martin Marietta Corporation, 856 F.2d 619, 622 (4th Cir.1988) (citing Bowman Dairy Co. v. United States, 341 U.S. 214, 219–20, 71 S.Ct. 675, 95 L.Ed. 879 (1951)), cert. denied, 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989).

█ Rule 17(c), however, is not intended as a means of obtaining discovery not otherwise available under Fed. R.Crim.P. 16, i.e., evidence consisting of documents and tangible objects which the government is required to disclose to the defendant in a criminal action because it is either material to the preparation of defendant's defense, intended for the government's use as evidence in chief at trial, or was obtained from or belongs to the defendant. United States v. Cuthbertson, 630 F.2d 139, 144 (3d Cir.1980).[3] Rather, "[R]ule 17(c) is designed as an aid for obtaining relevant evidentiary material [from a third party] that the moving party may use at trial." Id. Evidence sought only to impeach a government witness,

however, is not subject to production by a third party in response to a Rule 17(c) subpoena. United States v. Hughes, 895 F.2d 1135, 1146 (6th Cir.1990) (citing Nixon, supra, at 701, 94 S.Ct. 3090) ("the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."). In fact, statements of government witnesses "ripen into evidentiary material for purposes of impeachment only if and when the witness testifies at trial." Cuthbertson, supra, at 144. If, however, the defendant demonstrates that a government's witness's statements are relevant aside from impeachment purposes, the statements may be subpoenaed from a third party pursuant to Rule 17(c). See Cuthbertson, supra, at 145–46 (statements of nonwitnesses not subject to Rule 17(c) subpoena where statements had no impeachment value and defendant presented no other use for such statements except for general assertion statements may be exculpatory).

In the instant case, the Bank assumes that the challenged information is relevant only as impeachment material. Bank's Memorandum at 4, 5–6; Bank's Reply Memorandum at 4–6. The Bank also contends that the subpoena does not sufficiently specify the requested material as required such that the requested material is nothing more than a 'fishing expedition.' Bank's Reply Memorandum at 6–8. Defendant maintains that although the information sought may be used to impeach the Government's witnesses, it is also sought as material to the preparation of her defense. Schecter Affirmation at 4, 5–6.

### 1. Personnel Files

█ As to Defendant's request seeking the personnel files of HSBC's investigator

---

**3.** Fed.R.Crim.P. 16(a)(1)(C) authorizes discovery from the Government material to the defense, but excepts from discovery internal investigative documents "made by the attorney for the government or any other government agent investigating or prosecuting the case." Fed.R.Crim.P. 16(a)(2).

and the other Bank employees working at the Eden branch in July 1999, including Defendant's own personnel file, the Bank argues that the request is not sufficiently specified and amounts to nothing more than a "fishing expedition" in direct contravention of Rule 17(c). Bank's Reply Memorandum at 6–8. In response to the motion to quash, Defendant provides several reasons why the requested personnel files are sought not merely for impeachment purposes but, rather, to contest the embezzlement charges pending against her by demonstrating that other employees had sufficient motive to commit the alleged embezzlement, thereby creating a reasonable doubt as to Defendant's guilt. *See* Schecter Affirmation at 2–4. For example, Defendant maintains she knows that certain other Bank employees at the Eden branch had been investigated for unexplained shortages which were referred to the local police for further investigation, including _____ and _____ Schecter Affirmation at 2–3. Defendant asserts that HSBC's investigator Raymond Pavicich had previously arranged a personal interview with another bank teller Pavicich was investigating in connection with the alleged embezzlement in hopes of eliciting a confession and that such "outrageous conduct" would likely have been complained about by other bank employees with such complaints documented in Pavicich's personnel file. *Id.* at 3. Defendant further maintains that the Bank's complaint that the request for personnel files is unlimited in either time or scope is without merit given that the Government intends to introduce a Suspicious Activity Report concerning Defendant's shortage of $998 in 1995. *Id.* As such, Defendant maintains she should be permitted to introduce evidence, for the purpose of establishing reasonable doubt as to her culpability, that other employees had similar unexplained shortages over a similar time period. *Id.*

■ There is no indication that the Government intends to call any of the named employees as witnesses at trial, further negating the Bank's argument that information contained in the requested personnel files can qualify as nothing more than impeachment material. Further, as the Bank has not contradicted Defendant's representations regarding the existence of prior suspicious activity reports against the employees and Pavicich's investigative activities, Defendant's assertions in opposition of the motion to quash and in support of the subpoena have merit, demonstrating that information within the requested personnel files is material to the preparation of her defense as such material may create a reasonable doubt regarding her culpability for the alleged embezzlement. That the subpoena itself does not specify the precise information sought from the various personnel files, however, requires modifying the subpoena to request limited to only information demonstrating that other Bank employees assigned to the Eden Branch at the time of the alleged embezzlement were initially suspects in this case, had any financial motive to embezzle, or had similar shortages or losses attributed to them. Any complaints filed against HSBC investigator Pavicich relevant to "outrageous conduct" in interviewing others suspected of embezzlement, however, is subject to the subpoena only insofar as such material would identify other Eden branch Bank employees suspected of embezzling funds from Bank customers' accounts.

Insofar as Defendant seeks to obtain through disclosure of the requested personnel files information regarding prior acts of misconduct, inconsistent statements of government witnesses, and information relating to the character of such employees, including credibility and possible substance abuse history, Schecter Affirmation at 3–4, such information would be admissi-

ble only as impeachment material rather than to directly counter the Government's charges against Defendant. Significantly, no subpoena was involved in any of the cases Defendant cites in support of this request and in most of the cases, the information sought was discoverable only as impeachment material. *Id.* Moreover, even if, as Defendant asserts, *id.* at 1, such information is discoverable under Fed. R.Crim.P. 16, Rule 16 applies only to the Government's obligation to voluntarily provide discoverable material, rather than to a third party. *See United States v. Nachamie,* 91 F.Supp.2d 552, 562–63 (S.D.N.Y. 2000) (holding Government lacked standing to quash subpoenas served on nonparty in Medicare fraud case); *United States v. Recognition Equipment Inc.,* 720 F.Supp. 13, 14 (D.D.C.1989) (holding defendant could not rely on Rule 16 to obtain tax documents not in United States Attorney's possession).

■ The Bank also opposes the request for personnel files insofar as it would require the production of any Suspicious Activity Reports ("SARs") filed against any other Bank employee working at the Bank's Eden Branch in July 1999. Bank's Memorandum at 2 n. 1. According to the Bank, relevant regulations prohibit the disclosure of the existence and contents of any such SARs. *Id.* (citing 31 U.S.C. § 5318(g)(2)(A)(i) and 31 C.F.R. § 103.18(3)(e)). Defendant has not responded to this argument.

Initially, the court observes that it has already found in connection with Defendant's motion for discovery that such SARs are of use to Defendant to impeach government witnesses and, as such, will have a significant effect on the defense and thus be material to the defense. Decision and Order filed December 6, 2002 (Doc. No. 20) at 10. Accordingly, the Government was ordered to produce any such SARs insofar as they were under the Gov-

ernment's control. *Id.* The Government, however, never objected to the production of any SARs on the basis that any statute or regulation prohibited such disclosure. Nor does the record indicate whether the Government ever disclosed any SAR to Defendant.

■ Congress enacted the Annunzio–Wylie Anti–Money Laundering Act, 31 U.S.C. § 5318 ("the Act") to give the Secretary of the Treasury ("the Secretary"), "the power to require banks and other financial institutions to report suspicious transactions to the appropriate authorities." *Nevin v. Citibank,* 107 F.Supp.2d 333, 340 (S.D.N.Y.2000). Regulations promulgated under the Act require financial institutions like HSBC to file an SAR "no later than thirty (30) days after the initial detection of a known or suspected violation of federal law, a suspected transaction related to money laundering activity, or a violation of the Bank Secrecy Act." 12 C.F.R. § 21.11(d); *see Lee v. Bankers Trust Co.,* 166 F.3d 540, 544 (2d Cir.1999). Courts are aware that the disclosure of an SAR

> could compromise an ongoing law enforcement investigation, tip off a criminal wishing to evade detection, or reveal the methods by which banks are able to detect suspicious activity. Furthermore, [a] bank[ ] may be reluctant to prepare an SAR if it believes that its cooperation may cause its customers to retaliate, Moreover, the disclosure of an SAR may harm the privacy interests of innocent people whose names may be contained therein.

*Cotton v. PrivateBank and Trust Company,* 235 F.Supp.2d 809, 814 (N.D.Ill.2002).

*See also Weil v. Long Island Savings Bank,* 195 F.Supp.2d 383, 387–88 (E.D.N.Y.2001) ("the production of SARs by a bank in response to a subpoena would invariably increase the likelihood that the

'person involved in the transaction' would discover or be notified that the SARs had been filed").

As such, 31 U.S.C. § 5318(g) provides in relevant part

> (1) The Secretary may require any financial institution ... to report any suspicious transaction relevant to a possible violation of law or regulation.
>
> \* \* \* \* \* \*
>
> (2)(A)(i) the financial institution may not notify any person involved in the transaction that the transaction has been reported; and
> (ii) *no officer or employee of the Federal Government or of any State, local, tribal, or territorial government within the United States, who has any knowledge that such report was made may disclose to any person involved in the transaction that the transaction has been reported.*

31 U.S.C. §§ 5318(g)(1) and (2)(A) (emphasis added).

However, the regulation relevant to a national banking institution such as HSBC provides in relevant part

> SARs are confidential. Any national bank or person subpoenaed or otherwise requested to disclose a[n] SAR or the information contained in a[n] SAR *shall decline to produce the SAR or to provide*

*any information that would disclose that a [n] SAR has been prepared or filed,* citing this section, applicable law (e.g. 31 U.S.C. 5318(g)), or both and shall notify the O[ffice of the] C[omptroller of the] C[urrency].

12 C.F.R. § 21.11(k) (emphasis added).

 The regulation is thus broader in its prohibition against disclosure of the existence or content of an SAR than is the statute, although it has been held consistent with the statute. *See Weil, supra,* at 387–88 (as "the production of SARs by a bank in response to a subpoena would invariably increase the likelihood that the 'person involved in the transaction' would discover or be notified that the SARs had been filed, ... the regulation is consistent and in harmony with the statute.").[4] Thus, 31 U.S.C. § 5318(g) as implemented by 12 C.F.R. § 21.11(k) create an unqualified discovery and evidentiary privilege that cannot be waived. *Gregory v. Bank One Corp. Inc.,* 200 F.Supp.2d 1000, 1002 (S.D.Ind.2002) (citing *Lee, supra,* at 544) ("even in a suit for damages based on disclosure allegedly made in an SAR, a financial institution cannot reveal what disclosures it made in an SAR, or even whether it filed an SAR at all"), and *Weil, supra,* at 389–90 (observing that SAR confidentiality privilege is neither qualified

---

4. The Bank maintains the relevant regulation is 31 C.F.R. § 103.18(e) which pertains to both banks and other financial institutions which are subject to regulation by the Financial Crimes Enforcement Network of the Department of the Treasury ("FinCEN") and the Federal Reserve Board. In relevant part, 31 C.F.R. § 103.18 provides that

> No bank or other financial institution, and no director, officer, employee, or agent of any bank or other financial institution, who reports a suspicious transaction under this part, may notify any person involved in the transaction that the transaction has been reported. *Thus, any person subpoenaed or otherwise requested to disclose a [sic] SAR or the information contained in a [sic] SAR,*

> *except where such disclosure is requested by FinCEN or an appropriate law enforcement or bank supervisory agency, shall decline to produce the SAR or to provide any information that would disclose that a [sic] SAR has been prepared or filed, citing this paragraph (e) and 31 U.S.C. § 5318(g)(2), and shall notify FinCEN of any such request and its response thereto.*

31 U.S.C. § 103.18(e) (emphasis added). In light of the similarity between 31 C.F.R. § 103.18(e) and 12 C.F.R. § 21.11(k), the court finds that 31 C.F.R. § 103.18(e)'s prohibition' against disclosing the existence or contents of any SAR is also consistent with 31 U.S.C. § 5318(g).

nor subject to waiver by the financial institution). As such, the court is not authorized to order the disclosure of an SAR under the Act.[5]

Despite the prohibition against a bank's disclosure of the existence or contents of an SAR, any supporting documentation remains discoverable. *Gregory, supra*, at 1002 (finding the regulation's prohibition against disclosure of the existence or contents of an SAR "is limited to the SAR and the information contained therein; it does not apply to the supporting documentation."); *Weil, supra;* at 389 ("The privilege is, however, limited to the SAR and the information contained therein; it does not apply to the supporting documentation."). Although in some cases the supporting documentation may disclose the existence of an SAR and its contents, thereby thwarting the regulation's intent, any supporting documentation which would not reveal either the fact that an SAR was filed or its contents cannot be shielded from otherwise appropriate discovery based solely on its connection to an SAR. *Weil, supra. See Cotton, supra*, at 815 (observing two types of supporting documents including "factual documents which give rise to suspicious conduct [and which] must be produced in the ordinary course of discovery because they are business records made in the ordinary course of business," and "documents representing drafts of SARs or other work product or privileged communications that relate to the SAR itself" and should not be produced lest the fact that an SAR was prepared or filed be disclosed). Accordingly, any "supporting documentation" in relation to an SAR existing in the personnel file of any of the other Bank employees working at the Eden branch at the time of the alleged embezzlement must be produced,

provided such documentation does not disclose either the existence or contents of an SAR. *Weil, supra*, at 390.

To summarize, the court finds that Defendant's request for the complete personnel files of HSCB's investigator Raymond Pavicich and others employed at HSBC's Eden branch including Carol Banazak, Mary Lou Webb, Lynn Kruzka, Karen Lutz, Laura Bosinski, Mary Ann Frost, Diana Quirk, Kathleen Zugger and Defendant's own personnel file is unnecessarily broad, requiring modification. The court thus modifies the scope of the subpoena to any information contained in the specified personnel files demonstrating that any such employees were initially considered suspects with regard to the alleged embezzlement, had personal financial problems thereby establishing a potential motive to embezzle funds, or had unexplained shortages or losses attributed to them. However, the Bank need not disclose any information establishing the existence or contents of any SAR filed as to any such employee.

### 2. *Names and Addresses of Certain Account Holders*

As to Defendant's request for the names and addresses of holders of certain accounts that are not the subject of the Indictment, the court finds that information pertaining to these accounts is relevant and material to Defendant's defense, but that Defendant's asserted need for such material can be met without revealing such personal information. In particular, Defendant seeks this information to establish that the various Bank account numbers written allegedly by her on a certain piece of paper found in the course of investigating the alleged embezzlement had

---

5. The court does not intimate any view as to whether the application of 12 C.F.R. § 21.11(k) to the defense of a criminal prosecution may raise issues of constitutional dimension, and Defendant has not interposed such an argument.

been recorded in the course of her required work duties rather than to document the accounts she had allegedly compromised. Schecter Affirmation at 5–6. Specifically, according to Defendant, one of Defendant's job responsibilities was to periodically examine customer accounts and refer those account holders whose accounts showed large balances to Bank marketing employees who would then contact the account holders and advise them of additional Bank services available to them. *Id.* The Bank does not dispute this assertion. According to Defendant, upon examining the Bank's data base of customer accounts, she would record the account numbers of those accounts with balances sufficiently large to warrant a sales call from the Bank's marketing department in an attempt to sign the account holder up for other Bank services. After writing down the account numbers on a piece of paper, according to Defendant, she would then prepare referral slips which she then submitted to the appropriate bank personnel to act upon in providing such marketing services. Defendant also requested the Bank provide any referral slips for promotional services completed with regard to these accounts in July 1999. The Bank maintains, however, that referral slips are not retained beyond one year and, accordingly, any such referral slips would have been destroyed in the Bank's ordinary course of business. Defendant thus maintains that without the names and addresses of the account holders whose account numbers were recorded on the piece of paper, she will be unable to establish an innocent purpose for writing down the account numbers so as to counter the Government's case in chief. *Id.* at 6.

Defendant has established that information pertaining to these accounts is relevant and admissible other than as impeachment material because such information would permit Defendant to establish another, legitimate reason for recording the account numbers inconsistent with the Indictment's theory of guilt. The information has also been sufficiently specified given that the Bank could easily determine the names and addresses of the account holders. Nevertheless, the court finds the request is overbroad as Defendant's legitimate reason for seeking such material can be achieved through modification of the subpoena.

Defendant maintained at oral argument that obtaining the names and addresses of the account holders for the account numbers appearing on the piece of paper the Government intends to offer as evidence in chief at trial would permit her to interview the account holders and conceivably call them as witnesses at trial to testify that they received promotional calls from the Bank shortly after Defendant submitted their names for contact by the Bank's marketing department. However, it is unlikely that the account holders would recall receiving such calls more than three years ago. Rather, Defendant can establish her purported reason for recording the account numbers based on the balances in the accounts at the time the alleged embezzlement occurred, as well as from any records the Bank may have indicating that the account holder for any of the relevant accounts actually applied for any of the additional Bank services being promoted at that time.

Accordingly, the subpoena is modified to request, and the Bank is ordered to provide, the account balances during the relevant period, *i.e.*, July 28 to 30, 1999, for the HSBC accounts at the Eden branch bearing account numbers 4333821, 431325, 539151, 534230, 515944, 660456, 529155, 62139–6, 49957–4, 554737, 549296, 516754, 526827 and 864439113, without revealing the names and addresses of the relevant account holders. The subpoena is further modified to request, and the Bank ordered

to specify, for which of the aforementioned accounts the account holders applied for any services being promoted by the Bank at the time of the alleged embezzlement.

## CONCLUSION

Based on the foregoing, HSBC Bank USA's motion to quash the subpoena *duces tecum* is DENIED and the alternative request to modify the subpoena *duces tecum* is GRANTED. HSBC Bank USA is ORDERED to provide the subpoenaed material in accordance with this Decision and Order not later than 30 days prior to trial.

SO ORDERED.