López Feliciano, Jueza Ponente
*741 TEXTO COMPLETO DE LA SENTENCIA
Mediante solicitud de certiorari comparece ante este foro apelativo el Banco Popular de Puerto Rico (el BPPR) y nos solicita que revoquemos una orden dictada por la Sala Superior de San Juan del Tribunal de Primera Instancia, en el caso de la Corporación Pública para la Supervisión y Seguros de Cooperativas de Puerto Rico (la COSSEC) v. Manuel González López, el BPPR y otros, civil núm. KAC-04-0775, con la cual declaró sin lugar una “Solicitud de Orden Protectora bajo la Regla 23.2 de Procedimiento Civil”, presentada por el BPPR el 24 de agosto de 2004. Esta orden fue notificada a las partes el 21 de septiembre de 2004.
I
Los Hechos e Incidentes Procesales Pertinentes
El 4 de febrero de 2004, la COSSEC, por sí y como Síndico Administrador de la Cooperativa de Ahorro y Crédito de los Empleados de la Autoridad de los Puertos y la Autoridad Metropolitana de Autobuses (en adelante la COOP APPR-AMA), presentó demanda contra el que fuera administrador de la COOP APPR-AMA, de la esposa de éste y de la sociedad legal de gananciales compuesta por ambos; un hermano de dicho anterior administrador, la esposa de éste y la sociedad legal de gananciales compuesta por ambos; un grupo de directores y funcionarios de la COOP APPR-AMA y en algunos casos, contra los cónyuges y las sociedades legales de gananciales de éstos. También acumuló como partes a una compañía de contadores públicos autorizados y consultores; aseguradores; a otros posibles demandados desconocidos; y al BPPR, como institución financiera depositaría de fondos de la COOP APPR-AMA, alegadamente malversados por funcionarios de la COOP APPR-AMA.
En lo concerniente a la causa de acción contra el BPPR, la COSSEC alega el pago de cheques fraudulentamente endosados; descuido en la verificación de endosos de cheques; mala fe al no investigar alegadas transacciones sospechosas con la cuenta de la COOPR APPR-AMA; negligencia en el recibo de depósitos con cheques fraudulentamente endosados; negligencia en el pago de cheques fraudulentamente endosados; incumplimiento con leyes y reglamentos federales y estatales sobre el manejo de cuentas de cheques; descuido al no detectar y prevenir lavado de dinero producto de actividad criminal; incumplimiento con su deber de rendir informes de actividades sospechosas; autorización indebida de transacciones financieras fraudulentas; y el incumplimiento con el contrato de cuenta de cheques de la COOP APPR-AMA. Alegando, finalmente, que con dichas actuaciones, la parte demandante sufrió una pérdida económica de alrededor de $1.9 millones.
El BPPR oportunamente contestó la demanda, en síntesis, negando responsabilidad frente a las alegaciones de la parte demandante, o sea, la COSSEC.
Con fecha de 21 de abril de 2004, la COSSEC presentó ante el T.P.I. una solicitud de inspección y producción de objetos y documentos, amparándose en la Regla 31.1 de las de Procedimiento Civil vigentes, 32 L.P.R.A. Ap. BI, R. 31.1.
Con fecha de 21 de julio siguiente, el BPPR presentó su contestación a la solicitud de inspección y producción de objetos y documentos, en la cual mayoritariamente objetaba ciertos requerimientos y proveía información en un número menor de requerimientos.
El 11 de agosto de 2004, la COSSEC presentó una moción solicitando que se ordenara al BPPR producir los documentos que había objetado. En dicha moción, la COSSEC particularizó los siguientes requerimientos y la *742 posición del BPPR al objetarlos:

“Solicitud

1. Todo reglamento promulgado por el Banco Popular de Puerto Rico o que estuviese en vigencia durante el periodo de tiempo que comprende los años 1998, 1999, 2000, 20001, 2002 y 20003 relacionados con políticas contra el lavado de dinero, el fraude bancario y el endoso fraudulento de cheques.

Contestación

I. Se objeta. La información requerida está relacionada a la preparación de los “Suspicious Activity Reports” (“SARs"). Toda información relacionada con los SARs es confidencial por virtud de ley. Véase 31 USC & 5318(G), 12 cfr & 21.11(K) Y 31 cfr & 103.18 (E).

Solicitud

6. Cualquier documento, reglamento o informe que establezca la política del Banco Popular en cuanto a la radicación de los “Suspected [sic] Activities Reports”.

Contestación

6. Se objeta. Toda información relacionada a los SARs es confidencial. Véase 31 USC & 5318(g) 12 CFR & 21.11(h) y 31 CFR & 103.18 (e).

Solicitud

II. Reglamento del Banco Popular en cuanto al proceso a seguir por dicha institución, una vez obtiene un cheque para depósito.

Contestación

11. Se incluyen la sección D del “Contrato de Cuentas de Depósito”, y la sección 3 del “Manual de la Escuela de Pagadores Receptores ”.

Solicitud

15. Reglamento, documento o informe en torno al manejo y la administración de las cuentas de ahorro y cuentas corrientes de ex empleados del Banco Popular.

Contestación

15. Las cuentas de ex empleados se rigen por los mismos procedimientos que las de empleados. Se incluye la sección pertinente del manual de Apertura de Cuentas de Depósito.

Solicitud

16. Cualquier documento, reglamento, informe o política interna provisto por el Banco Popular para detectar el lavado de dinero, fraude bancario y endosos fraudulentos.

*743
Contestación

16. Se objeta. Véase contestación número 1. Véanse Solicitud de Documentos, Apéndice 20-23; y Contestación a Solicitud de Documentos del Banco, Apéndice 24-26. ”

El 24 de agosto de 2004, el BPPR presentó una solicitud de orden protectora bajo la Regla 23.2 de las de Procedimiento Civil vigentes, 32 L.P.R.A. Ap. m, R. 23.2. En esencia, en dicha moción, el BPPR solicitó al T.P. I.que prohibiera a cualquier parte en el pleito solicitar el descubrimiento de la siguiente información:

“1. El hecho de si se prepararon o se radicaron SARs, o si no se hizo;

2. Cualquier SAR preparado por el BPPR;

3. El contenido de cualquier SAR preparado por el BPPR;

4. Cualquier documentación que se haya generado con propósitos relacionados a la preparación de SARs;

5. Cualquier comunicación escrita u oral con las autoridades gubernamentales en relación a los hechos que pudieron motivar la preparación de SARs; y

6. Los métodos, guías y criterios mediante los cuales el BPPR identifica las transacciones que pudieran motivar la preparación de SARs.

Además, ... que ... declare sin lugar la petición que hace COSSEC para que el BPPR entregue unos documentos que no son pertinentes para este caso, a saber, los demás documentos que COSSEC está pidiendo en las solicitudes 11 y 15.

Por último, ... también solicita ... que ordene a todas las partes en el pleito mantener la confidencialidad y no revelar los documentos, materiales, manuales, módulos, e información interna del BPPR relacionada a sus procedimientos internos, incluyendo los procedimientos relacionados al manejo de cheques, depósitos, retiros y cuentas bancarias. ”

Con fecha de 7 de septiembre de 2004, la COSSEC replicó a dicha solicitud de orden protectora. En síntesis, solicitó que el T.P.I. ordenara al BPPR producir:

“(1) Cualquier documento, reglamento o informe que establezca la política del Banco Popular en cuanto a la radicación de los “Suspicious Activity Reports"; (2) Cualquier documento, reglamento, informe o política interna provisto por el Banco Popular para detectar el lavado de dinero, fraude bancario y endosos fraudulentos; y (3) Todo reglamento promulgado por el Banco Popular de Puerto Rico o que estuviese en vigencia durante el período de tiempo que comprende los años 1998, 1999, 2000, 2002 y 2003 relacionados con políticas contra el lavado de dinero, el fraude bancario y el endoso fraudulento de cheques. ”

El 22 de septiembre siguiente, el BPPR solicitó del T.P.I. que concediera la orden protectora solicitada o que en la alternativa pospusiera la decisión sobre el descubrimiento de prueba solicitado hasta conocer la posición al respecto del Financial Crimes Enforcement Network del Departamento del Tesoro Federal (“FinCEN”) y de Office of the Comptroller of the Currency (“OCC’). El BPPR anunció en dicha moción que notificaría a dichas agencias federales sobre el pleito para que intervinieran en el mismo. 
Con fecha de 13 de septiembre de 2004 y notificación a las partes el 21 de septiembre siguiente, el T.P.I. dictó una orden pronunciándose no ha lugar a la solicitud de orden protectora presentada por el BPPR. Es de este *744 dictamen que el BPPR recurre ante este foro apelativo.
II
Las Cuestiones Planteadas
En su petición, el BPPR plantea que el T.P.I. incidió en los siguientes errores:

“Erró el Honorable Tribunal de Primera Instancia al denegar la Solicitud de Orden Protectora y de esa forma ordenar al Banco a producir documentos relacionados a los SARs en violación a las leyes y reglamentos bancarios federales y exponiendo al Banco, sus oficiales y sus empleados a ser procesados criminalmente en el foro federal y a que se les impongan penas de multa y cárcel.

Erró el Honorable Tribunal de Primera Instancia al denegar la Solicitud de Orden Protectora y de esa forma ordenar al Banco a producir documentos internos y confidenciales que no tienen relevancia a los hechos de este caso ni conceden al descubrimiento de prueba admisible.

Erró el Honorable Tribunal de Primera Instancia al denegar la Solicitud de Orden Protectora y de esa forma denegar la solicitud que hizo el Banco para que se emitiera una orden a todas las partes en el pleito para que mantenga confidenciales los documentos internos que el Banco produzca durante el descubrimiento en este caso. ”

Dichos errores pueden contraerse a las siguientes cuestiones planteadas:
1. Si incidió el T.P.I., al no imponer limitaciones a documentos relacionados con los SARs, en violación a las leyes y reglamentos federales.
2. Si incidió el T.P.I., al no imponer limitaciones a los documentos intemos y confidenciales del banco que no tienen pertinencia con las alegaciones y hechos de las causas de acción instadas.
III
El Derecho Aplicable
A
Alcance del Descubrimiento de Prueba
La Regla 23 de las de Procedimiento Civil vigentes, 32 L.P.R.A. Ap. Ill, R. 23, establece las normas que rigen el descubrimiento de prueba en nuestro ordenamiento procesal civil.
En lo pertinente al caso de autos, la Regla 23.1 (a) dispone lo siguiente:

“Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera la reclamación o defensa de cualquier otra parte, incluyendo la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de dicha información conduzca al descubrimiento de evidencia admisible

De esta regla se desprenden dos limitaciones al mecanismo de descubrimiento de prueba, a saber:
1. La información de descubrimiento no puede ser materia privilegiada; y
*745 2. La materia a descubrir debe ser pertinente a la controversia objeto del pleito.
Nuestro Tribunal Supremo ha puntualizado que “los mecanismos de descubrimiento de prueba están basados en el principio básico de que, antes del juicio, las partes tienen derecho a descubrir toda la información relacionada con su caso, independientemente de quién la posea Que “las normas de descubrimiento de prueba persiguen los siguientes propósitos: (1) precisar los asuntos en controversia; (2) obtener evidencia para ser utilizada en el juicio, evitando así sorpresas en esta etapa de los procedimientos; (3) facilitar la búsqueda de la verdad; y (4) perpetuar evidencia”. 
En la consecución de los objetivos de la Regla 23, supra, también el Tribunal Supremo ha enfatizado que respecto al alcance del descubrimiento de prueba, impera la política de que dicho procedimiento debe ser amplio y liberal. 
Aunque nuestras reglas procesales dejan en manos de los abogados el trámite del descubrimiento de prueba, los tribunales de instancia tienen amplia discreción para regular el ámbito del mismo. A tales efectos, la Reglas, 23.2, 32 L.P.R.A. Ap. III, R. 23.2, autoriza al tribunal a emitir órdenes protectoras para proteger a cualquier parte o persona de hostigamiento, perturbación u opresión, de cualquier gasto o molestia indebida que el descubrimiento pueda ocasionarle. Véase Hernández Colón, Rafael, Práctica Jurídica de Puerto Rico-Derecho Procesal Civil, Michie, 1997, see. 2808, págs. 226-227.
B
Legislación Federal Pertinente
En 1992, el Congreso aprobó y el Presidente de los Estados Unidos firmó la ley conocida como “Housing and Community Development Act of 1992”, dentro de la cual está la llamada “Annunzio-Wylie Anti Money Laundering Act” (en adelante la “AMLA”). Esta legislación tiene el propósito de detectar y evitar las transacciones relacionadas con el lavado de dinero y otras actividades delictivas donde los bancos e instituciones financieras puedan ser utilizados como medios.
Basándose en esta ley federal, las agencias federales reguladoras con competencia sobre la materia promulgaron reglas y reglamentos dirigidos a los bancos y otras instituciones financieras, obligándolos a informarles de aquellas actividades que fueran sospechosas. Dichas actividades se informarían a través de los llamados “Suspicious Activity Reports” (en adelante SAR o SARs). Entre las agencias federales que exigen estos informes están el FinCEN y el OCC, supra.
La AMLA, 31 U.S.C. 5318(g), impone ciertas limitaciones a la divulgación de los SARs. En lo pertinente dispone dicha sección:

“(2) Notification prohibited.

(A) In general. —If a financial institution or any director, officer, employee, or agent of any financial institution, voluntarily or pursuant to this section or any other authority, reports a suspicious transaction to a government agency—

(i) the financial institution, director, offícer. employee, or asent max not notify am person involved in the transaction that the transaction has been reported: and

(ii) no officer or employee of the Federal Government or of any State, local, tribal, or territorial government within the united States, who has any knowledge that such report was made may disclose to any person involved in the transaction that the transaction has been reported, other than as necessary to fulfill the *746 official duties of such officer or employee”. (Subrayado nuestro)
La confidencialidad de los SARs se precisa en el “Code of Federal Regulations”, sobre actividades bancarias (12 C.F.R.), que dispone en su sección 21.11(k) lo siguiente:
“Confidentiality of SARs. SARs are confidential. Any national bank or person subpoenaed or otherwise requested to disclose a SAR or to provide any information that would disclose that a SAR has been prepared or filed, citing this section, applicable law (e.g., 31 U.S.C. 5318(g), or both, and shall notify the OCC.” (Subrayado nuestro)
Por otro lado, en otra parte del “Code of Federal Regulations” (31 C.F.R.), sobre moneda y finanzas, se dispone en la sección 103.18(e):
“Confidentiality of Reports; limitation of liability. No bank or other financial institution, and no director, officer, employee, or agent of any bank or other financial institution, who reports a suspicious transaction under this part, may notify any person involved in the transaction that the transaction has been reported. This, am verson subpoenaed or otherwise requested to disclose a SAR or the information contained in a SAR. except where such disclosure is requested by FinCEN or an appropriate law enforcement or bank supervisory asencv. shall decline to produce the SAR has been prepared or filed, citins this paragraph (e) and 31 U.S.C. 5318(e)(2). and shall notify FinCEN of am such request and its response thereto. A Bank, and any director, officer, employee, or agent of such bank, that makes a report pursuant to this section (whether such report is required by this section or is made voluntarily) shall be protected from liability for any disclosure contained in, or for failure to disclose the fact of such report, or both, to the full extent provided by 31 U.S.C. 5318(g) (3).” (Subrayado nuestro)
De la legislación y reglamentación federal antes expuesta, surge que la divulgación de los SARs está protegida por un palio de confidencialidad. No obstante, examinemos algunos pronunciamientos importantes de los tribunales federales sobre esta materia como resultado de pleitos donde se ha planteado el asunto.
En Cotton v. PrivateBank, 235 F.Supp.2d 809 (USDC-N.D.Illinois-11/23/2002), dentro del procedimiento de descubrimiento de prueba en una acción civil, una parte solicitó la producción de un SAR y la documentación en que se apoyaba el mismo. El tribunal federal resolvió que el SAR no es divulgable y que, además, la AMLA y los reglamentos federales adoptados para ponerla en vigor prohíben la divulgación de los SARs y de los documentos que puedan revelar su existencia y contenido. Sobre esto puntualizó el tribunal lo siguiente:
“PrivateBank relies upon Dupre v. Federal Bureau of Investigation. No. Civ. A. 01-2431, 2002 WL 1042073 (E.D.La. May 22, 2002). Dupre involved a lawsuit brought under the Freedom of Information Act (“FOIA"), 5 USC § 552. The court ordered production of information found in one part of a subject SAR which provides a narrative description of the plaintiff’s transactions and communications with the bank involving the bad check in dispute. Ordering the information produced, the court reasoned that SAR section did not provide privileged or confidential information and that it finds it difficult to believe there is anything contained in that section of that section of the SAR which plaintiff does not already know. ’

Although Dupre involved 31 CFR § 103.18, this Court does not find the reasoning persuasive. Nothing in the Act or regulations prohibits the disclosure of the underlying factual documents, which may cause a bank to submit a SAR. Furthermore, those underlying documents do not become confidential by reason of being attached or described in a SAR. For example, if a wire transfer of funds is described in a SAR as a suspicious activity, the wire remains subject to discovery. Therefore, the better approach prohibits disclosure of the SAR while making clear that the underlying transactions such as wire transfers, checks, deposits, etc. are disclosed as part of the normal discovery process.

*747 While Dupre interprets § 103.18(e), there are other cases interpreting 12 C.F.R. § 21.11(h) and 12 C.F.R. § 563.180(d). Interpretation of these regulations is applicable and necessary due to the almost identical language used in all three regulations. The court In re: Mezvinsky denied a motion to compel the production of an SAR sought in a subpoena directed to non-party. 2000 WL 339550697, al (Bhrtcy.E.D.Pa.2000). The Court observed that the Code of Federal Regulations, specifically 12 C.F.R. § 4.31 et seq., provides a mechanism for litigants to request the OCC to provide them with access to SARs. However, the Court applied 12 C.F.R. § 21.11(h) which specifically directs a bank to ‘decline to produce the SAR or to provide any information that would disclose that the SAR has been prepared or filed, ... Mezvinsky, 2000 WL 339550697. ” (Subrayado nuestro)
En U.S. v. Holihan, 248 F.Supp.2d 179 (USDC-W.D.New York-1/13/2003), se trataba de un caso criminal donde un empleado bancario que fue acusado por malversar fondos de la institución. Dentro del proceso criminal, el acusado presentó un “subpoena duces tecum” para que el banco produjera libros, documentos, papeles y otros objetos. El banco objetó la producción de ciertos documentos, entre los que se mencionaban a los SARs. El tribunal federal denegó la moción del banco para dejar sin efecto el “subpoena duces tecum” y modificó el alcance del descubrimiento solicitado, expresando lo siguiente:
“Congress enacted the Annunzio-Wylie Anti-Money Laundering Act, 31 USC § 5318 (‘the Act’) to give the Secretary of Treasury (‘the Secretary’), ‘the power to required banks and financial institutions to report suspicious transactions to the appropriate authorities.’ Nevin v. Citibank, 107 F.Supp.2d 333, 340 (S.D.N.Y.2000). Regulations promulgated under the Act require financial institutions like HSBC to file an SAR ‘no later than thirty (30) days after the initial detection of a known or suspected violation of federal law, a suspected transaction related to money laundering activity, or violation of the Bank Secrecy Act. ’ 12 C.F.R. § 21.11(d); see Lee v. Bankers Trust Co., 166 F.3d 540, 544 (2d Cir.1999). Courts are aware that the disclosure of an SAR could compromise an ongoing law enforcement investigation, tip off a criminal wishing to evade detection, or reveal methods by which banks are able to detect suspicious activity. Furthermore, [a] bank [] may be reluctant to prepare an SAR if it believes that its cooperation may cause its costumer to retaliate. Moreover, the disclosure of an SAR may harm the privacy interest of innocent people whose names may be contained therein. Cotton v. PrivateBank and Trust Company, 235 F.Supp2d 809, 814 (N.D.Ill.2002). See also Weil v. Long Island Savings Bank, 195 F.Supp.2d 383, 387-88 (E.D.N.Y.2001) (‘the production of SARs by a bank in response to a subpoena would invariably increase the likelihood that the ‘person involved in the transaction’ would discover or be notified that the SARs had been filed’).

As such, 31 USC § 5318(G) provides in relevant part:

(1) The Secretary may require any financial institution ... to report any suspicious transaction relevant to a possible violation of law or regulation.

(2)(A)(i) may not notify any person involved in the transaction that the transaction has been reported; and

(ii) no officer or employee of the Federal Government or of any State, local, tribal, or territorial government within the United States, who has any knowledge that such report was made may disclose to any person involved in the transaction that the transaction has been reported. 31 USC §§ 5318(g)(1) and (2)(A) (emphasis added).

However, the regulation relevant to a national banking institution such as HSBC provides in relevant part: ‘SARs are confidential. Any national bank or person subpoenaed or otherwise requested to disclose a[n] SAR or the information contained in a[n] SAR shall decline to produce the SAR or to provide any information that would disclose that a[n] SAR has been prepared or filed, citing this section, applicable law (e.g. 31 U.S.C. § 5318(g)), or both and shall notify the Offfice of the] Comptroller of the] Cfurrencyf. 12 C.F.R. § 21.11(k). (emphasis added).

*748 The regulation is thus broader in its prohibition against disclosure of the existence or content of an SAR than is the statute, although it has been held consistent with the statute. See Weil, supra, at 387-88 (as ‘the production of SARs by a bank in response to a subpoena would invariably increase the likelihood that the 'person involved in the transaction’ would discover or be notified that the SARs had been filed, ... the regulation is consistentand in harmony with the statute. ’) Thus, 31 U.S.C. § 5318(g) as implemented by the 12 C.F.R. § 21.11 (k) create an unqualified discovery and evidentiary privilege that cannot be waived. Gregory v. Bank One Corp., Inc, 200 F. Supp.2d 1000, 1002 (S.D.Ind.2002) (citing Lee, suprs, at 544) (‘even in an suit for damages based on disclosure allegedly made in an SAR, a financial institution cannot reveal what disclosures it made in an SAR, or even whether it filed an SAR at all’), and Weil, supra, at 389-90 (observing that SAR confidentiality privilege is neither qualified nor subject to waiver by the financial institution). As such, the court is not authorized to order the disclosure of an SAR under the Act. ” (Subrayado nuestro)
Más recientemente, en Whitney v. Karam, 306 F.Supp.2d 678 (USDC-S.D.Texas-2/20/2004), al sostener nuevamente la confidencialidad de los SARs un tribunal federal lo expresó en los siguientes términos:
“In this case, defendants have disavowed any desire the existence or contents of a SAR, but seek all communications between the Whitney Bank Parties and law enforcement or government agencies relating to defendants or their transactions or activities al Whitney Bank. The line defendants seek to draw in not one the cases recognize. Under the cases applying the statutes and regulations, a court should protect against discovery into information that would reveal that a report of a suspicious transaction to a government agency has been prepared or filed or would reveal its content. The cases have read this prohibition as extending to whether a SAR or other report of suspicious transaction to a governmental agency exists; whether such a report is being prepared or has been filed; and the contents of such report or the information contained therein. Courts have, however, allowed the production of supporting the documentation that was generated or received in the ordinary course of bank’s business, on which the report of suspicious activity was based. See Weil, 195 F. Supp.2d at 389 (‘The privilege is, however, limited to the SAR and the information contained therein; it does not apply to the supporting documentation.’); Cotton, 235 F.Supp.2d at 815 (observing two types of supporting documents, including factual documents which give rise to suspicious conduct [and which] must be produced in the ordinary course of discovery because they are business records made in the ordinary course of business’, and ‘documents representing drafts of SARs or other work product or privileged communications that relate to the SAR itself and should not ‘be produced they would disclose whether a SAR has been prepared or filled’); U.S. v. Holihan, 248 F.Supp.2d 179, 187 (W.D.N.Y.2003); In re: Mezvinsky, 2000 Bankr.LEXIS 1067, 8-9 (E.D.Pa.2000).
In this case, while defendants disavow any interest in the production of SARs filed by the Whitney Bank Parties with governmental agencies or officials, the statute and regulation protects a broader range of communications from production. The statute and regulations prohibit disclosure, and the immunity provisions make the information irrelevant. The Whitney Bank Parties are protected from the production of communications they made to governmental agencies or officials reporting possible or suspected violations of laws or regulations by the defendants, or pertaining to such reports. Such communications may consist of a SAR itself; communications pertaining to a SAR or its contents; communications preceding the filing of a SAR and preparatory or preliminary to it; communications that follow the filing of a SAR and are explanations or follow-up discussions; or oral communications or suspected or possible violations that did not culminate in the filing of a SAR. The Whitney Bank Parties must produce documents produced in the ordinary course of business pertaining to the defendants' banking activities, transactions, and accounts, but may not produce documents or information that could reveal whether a SAR or other report of suspected or possible violations has been prepared or filed or what it might contain, or the discussions leading up to or following the preparation or filing of a SAR or other form of report of suspected or possible violations...”. (Subrayado nuestro)
*749 IV
Análisis de las Cuestiones Planteadas y Conclusiones de Derecho
A
En primer lugar, pasamos a analizar los planteamientos de las partes sobre los documentos relacionados con los llamados SARs.
En su “Oposición a Solicitud de Orden en Auxilio de Jurisdicción”, la COSSEC hace hincapié en que “no solicita la producción de los SARs ni la información contenida en cualquier SAR radicado... ”. No obstante, en su “Oposición a la Petición de Certiorari”, reclama que el BPPR le divulgue y descubra los siguientes documentos:

“1. Todo reglamento promulgado por el Banco Popular de Puerto Rico o que estuviese en vigencia durante el período de tiempo que comprende los años 1998, 1999, 2000, 2001, 2002 y 2003 relacionados con políticas contra el lavado de dinero, el fraude bancario y el endoso fraudulento de cheques.

6. Cualquier documento, reglamento o informe que establezca la política del Banco Popular en cuanto a la radicación de los Suspected Activity Reports.

16. Cualquier documento, reglamento, informe o política interna provisto por el Banco Popular para detectar el lavado de dinero, fraude bancario y endosos fraudulentos. ”

El BPPR objetó la entrega de dichos documentos. A continuación, los fundamentos de su objeción en el mismo orden antes expuesto:

“1. Se objeta. La información requerida está relacionada a la preparación de los ‘Suspected Activity Reports’ (‘SARs’). Toda información relacionada con los SARs es confidencial por virtud de ley. Véase 31 U.S.C. 5318(g), 12 C.F.R. § 21.11(h) y 31 C.F.R. § 103.18(e).

6. Se objeta. Toda información relacionada a los SARs es confidencial. Véase 31 U.S.C. 5318(g), 12 C.F.R. § 21.11(h) y 31 C.F.R. § 103.18(e).

16. Se objeta. Véase contestación número 1. ”

En los escritos ante nuestra consideración, la COSSEC insiste en que no está requiriendo del BPPR la producción de los SARs, al plantear que hay una diferencia entre lo que es propiamente un SAR y lo que es cualquier documento, reglamento o informe donde se establezca la política institucional del banco en cuanto a informar actividades sospechosas, mediante la radicación de un SAR.
Teniendo presente la normativa interpretativa en la jurisdicción federal, según antes expuesta, podemos concluir que ciertamente los documentos que puedan constituir evidencia de una transacción sospechosa, como lo pueden ser cheques, hojas de depósitos, recibos de transferencias, transferencias electrónicas y otros documentos inherentes al manejo y movimiento de una cuenta bancaria, de ser pertinentes al asunto en controversia ante un tribunal, son susceptibles de divulgación dentro del descubrimiento de prueba.
Los casos federales citados enfatizan que lo que no puede divulgarse o descubrirse, dada la protección de confidencialidad establecida en la sección 31 U.S.C. sec. 5318(g), es lo siguiente:

“1. El documento del SAR propiamente y su contenido;

2. Borradores preparados de un SAR o el producto del trabajo realizado con un SAR;

*750
3. Comunicaciones del banco o institución financiera con agencias federales pertinentes al contenido del SAR;

4. Comunicaciones del banco o institución financiera con agencias federales precedentes a la radicación del SAR;

5. Comunicaciones del banco o institución financiera con agencias federales posteriores a la radicación del SAR, como lo son explicaciones o discusiones de seguimiento;

6. Comunicaciones orales del banco o institución financiera con agencias federales sobre posibles actividades sospechosas que no culminan con la radicación del SAR;

7. Información sobre si existe o no un SAR;

8. Información sobre si se ha preparado o no un SAR; e

9. Información sobre los métodos utilizados por los bancos para detectar actividades financieras sospechosas bajo la AMIA. ” Véase U.S. v. Holihan, supra.
Los motivos o propósitos para evitar la divulgación o descubrimiento de esos documentos o actividades bancarias, es proteger la confidencialidad de las investigaciones que llevan a cabo las agencias federales con competencia sobre la materia y estimular las actuaciones de los bancos y las instituciones financieras para detectar actividades ilegales utilizando el sistema bancario. La protección se extiende hasta la concesión de inmunidad absoluta a los bancos, instituciones financieras y a sus funcionarios y empleados contra cualquier reclamación por haber informado actividades sospechosas mediante la presentación de los SARs. Así se dispone en la reglamentación consignada en 31 C.F.R. sec. 103.18(e), supra.
Reconocidas las limitaciones antes expuestas a la divulgación de los SARs e información relacionada con los mismos, los tribunales federales han permitido la producción de ciertos documentos en poder de bancos e instituciones financieras que han dado base o servido de apoyo para identificar una actividad sospechosa y someter un SAR. Entre los documentos así considerados, están, aquéllos que se generan o reciben en el curso ordinario de los negocios de un banco o institución financiera, tales como cheques, estados de cuentas, hojas de depósito, hojas de transferencias y transferencias electrónicas.
Debemos ahora dejar establecido que, en su oposición a la expedición del auto solicitado, COSSEC estipula que no tiene reparo alguno en mantener de manera confidencial y no divulgar a terceros, excepto a aquellas agencias federales pertinentes y a los demás codemandados, los documentos que le ha divulgado y los que pueda divulgar el BPPR durante la tramitación del pleito de marras.
Por lo tanto, el T.P.I. debió emitir una orden protectora imponiendo al descubrimiento de prueba solicitado las limitaciones establecidas en la ley federal AMLA, 31 U.S.C. sec. 5318(g), y en la reglamentación federal aplicable, 12 C.F.R. sec. 21.11 (k) y 31 C.F.R. sec. 103.18(e); así como otras limitaciones reconocidas por los tribunales federales, según antes reseñadas.
B
Consideremos a continuación el planteamiento del BPPR en cuanto a si el T.P.I. debió imponer limitaciones a los documentos internos del banco requerido por la COSSEC y sobre los que el BPPR plantea no tienen pertinencia con las alegaciones y hechos de las causas de acción instadas.
La COSSEC solicitó que se descubriera todo reglamento promulgado por el BPPR o que estuviese en *751 vigencia durante los años en que se alega que los codemandados malversaron fondos a través de transacciones bancarias de la COOP APPR-AMA relacionado con las políticas institucionales contra el lavado de dinero, el fraude bancario y el endoso fraudulento de cheques. El BPPR objetó dicho descubrimiento alegando que la información así requerida está relacionada con la preparación de los SARs. Tiene razón.
Como antes dicho, la ley AMLA, la reglamentación federal para su implantación y la normativa jurisprudencial federal limita el descubrimiento de prueba cuando se trata de información requerida sobre los métodos utilizados por los bancos para cumplir con la AMLA. Así se desprende de lo resuelto en los casos federales antes citados.
La política de cualquier banco o institución financiera sobre los métodos para detectar actividades o transacciones financieras sospechosas surge de la propia política pública establecida en la AMLA para requerir la radicación de un SAR. En esencia se trata de un informe sobre toda transacción que la institución sospeche pueda estar relacionada con lavado de dinero o algún otro tipo de actividad ilegal.
Por tanto, la política particular de un banco o institución financiera, en cumplimiento con la AMLA, no es divulgable. De permitirse su divulgación, se estaría informando de las técnicas o métodos utilizados para detectar las actividades sospechosas, lo que podría propiciar que los violadores de la ley busquen maneras para burlar dichas estrategias investigativas, lo que derrotaría los propósitos de la AMLA.
Ahora bien, no vemos carácter de confidencialidad cuando lo que se requiere descubrir son documentos tramitados en el curso ordinario de los negocios, pertinentes en un pleito donde la parte reclamante imputa, como en el presente caso, a la institución bancaria o financiera haber actuado negligentemente en el cambio de cheques mediante endosos fraudulentos y en el mantenimiento de cuentas bancarias mediante fraude bancario.
Por tanto, documentos tales como cheques, estados de cuenta bancaria, hojas de depósito, transferencias y transferencias electrónicas, cuando son pertinentes, están sujetos a descubrimiento bajo aquellas reglas que el tribunal en el ejercicio de su discreción pueda establecer para evitar la divulgación indiscriminada e imprudente de lo descubierto.
De igual manera, cuando sea pertinente, también serían divulgables y sujetos a descubrimiento las políticas internas o reglamentación sobre los procedimientos a seguir cuando se recibe un cheque para depósito; las políticas internas o reglamentación para el manejo y administración de las cuentas bancarias, como también son las cuentas corrientes y de ahorro.
y
Disposición del Recurso
Por los fundamentos antes expuestos, se revoca la orden dictada por la Sala Superior del Tribunal de Primera Instancia en el caso de autos y se devuelve el asunto a dicho foro primario para que vuelva a considerar la solicitud de orden de protección de la parte aquí peticionaria, estableciendo mediante dictamen fundamentado las guías o parámetros de lo que será divulgable o sujeto a descubrimiento. Todo ello, de conformidad con lo aquí resuelto y dispuesto.
Notifíquese.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General
*752 ESCOLIOS 2005 DTA 12
1. Las partes no han notificado a este Tribunal si dichas agencias federales han ejercido algún tipo de intervención en el asunto.
2. Rivera v. BPPR, _ D.P.R. _ (2000), 2000 J.T.S. 156; Medina v. MS&D Química, 135 D.P.R. 716, 730-731 (1934); Ortiz Rivera v. E.L.A., 125 D.P.R. 65, 70 (1989); General Electric v. Consessionaries, 118 D.P.R. 32, 38-39 (1986).
3. Rivera v. BPPR, supra.
4. Ibid.
5. Ibid.
6. Ibid; Machado v. Barranco, 119 D.P.R. 563, 566 (1987); Rivera v. Tribunal Superior, 99 D.P.R. 276, 278 (1970); Martínez v. Tribunal Superior, 85 D.P.R. 1, 13 (1962).
7. Estas son las actividades financieras ilegales que la AMLA persigue descubrir a través de los bancos e instituciones financieras.