Burton W. WIAND, as Court–Appointed Receiver for Scoop Real Estate, L.P., et al., Plaintiff,

v.

WELLS FARGO BANK, N.A., et al., Defendants.

Case No. 8:12–CV–557–T–27EAJ.

United States District Court, M.D. Florida, Tampa Division.

Oct. 25, 2013.

Sean P. Keefe, Terry Alan Smiljanich, James, Hoyer, Newcomer & Smiljanich, PA, Tampa, FL, for Plaintiff.

Beth A. Cronin, Dale W. Cravey, Marie Tomassi, Trenam Kemker, St. Petersburg, FL, Charles M. Harris, Jr., Marvin E. Barkin, Trenam Kemker, Tampa, FL, for Defendants.

## ORDER

ELIZABETH A. JENKINS, United States Magistrate Judge.

Following *in camera* review of the privilege log and documents submitted by Defendant Wells Fargo Bank, N.A. ("Wells Fargo") pursuant to a prior order (Dkt. 83), as well as the Joint Proposed Protocol for *In Camera* Review (Dkt. 84), and following oral argument on September 23, 2013, the Court finds that Wells Fargo has sustained its position regarding some of the documents identified below, but that most of the documents are not protected by the privilege asserted.

### Background

Plaintiff Burton W. Wiand ("Receiver") is the court-appointed Receiver for six hedge funds that lost approximately $168 million in a Ponzi scheme run by Arthur Nadel ("Nadel") from 1999 to 2009. In this lawsuit, Receiver alleges that Defendants Wells Fargo, *et al.* (collectively, "Defendants") failed to comply with federal banking regulations and the bank's own internal procedures which allowed Nadel to conduct the Ponzi scheme. Here, Receiver challenges Wells Fargo's assertion of privilege for certain documents that the

bank has withheld from discovery (hereinafter "Bank Documents").

The privilege is the Suspicious Activity Report ("SAR") privilege, which pertains to certain reporting requirements imposed on financial institutions by federal law. The prior order directed Wells Fargo to submit for *in camera* review "any documents that have been withheld under the SAR privilege, but which are neither SARs nor documents which refer to any SAR-related decision." (Dkt. 83 at 8) As such, the Bank Documents do not clearly fall under the privilege. The parties have articulated their respective positions regarding the scope of the SAR privilege in prior submissions, in the Joint Proposed Protocol, and at oral argument.

Essentially, Wells Fargo maintains that the SAR privilege covers not only a SAR and any information that could reveal the existence of a SAR, but also material prepared by the bank to detect suspicious activity, regardless of whether a SAR was ultimately filed or not. The bank contends that any material prepared as part of the bank's process for complying with federal reporting requirements or to detect and report suspicious activity is covered by the SAR privilege. Receiver responds that the SAR privilege does not extend to other reports of suspicious activity generated by the bank's internal investigations, even if a SAR may be anticipated, as it is standard business practice for a bank to investigate suspicious activity to protect its interests. Pointing to the express language in federal regulations that exempts underlying documents from the SAR privilege, Receiver

argues that the Bank Documents, as described in the privilege log, are not covered under the SAR privilege.

### Discussion

 It is well established that the party invoking a privilege "bear[s] the burden of proving its existence." *In re Grand Jury Investigation,* 842 F.2d 1223, 1225 (11th Cir.1987) (citations omitted) (referring to attorney-client privilege). Moreover, because withholding of otherwise discoverable information "serves to obscure the truth," a privilege "should be construed as narrowly as is consistent with its purpose." *United States v. Suarez,* 820 F.2d 1158, 1160 (11th Cir.1987) (citation omitted).

 It is undisputed that the Bank Documents are responsive to prior discovery requests. The Court has likewise determined that they are relevant. The only issue is whether they are subject to the "absolute prohibition" against disclosure under the SAR privilege established by federal law.[1] *In re Whitley,* No. 10–10426C–7G, 2011 WL 6202895, at *3 (Bankr.M.D.N.C. Dec. 13, 2011) (citation and internal quotation marks omitted). Pursuant to the Annunzio–Wylie Anti–Money Laundering Act, 31 U.S.C. § 5318,[2] financial institutions are required to file SARs to notify the government of possible criminal activities. *Cotton v. PrivateBank & Trust, Co.,* 235 F.Supp.2d 809, 812 (N.D.Ill.2002) (citation and footnote omitted). SARs are confidential and subject to an "unqualified discovery and evidentiary privilege that courts have held cannot be

---

1. No other privilege or limitation on discovery has been asserted as to these documents or is applicable. *Cf. Raffa v. Wachovia Corp.,* No. 8:02–CV–1443–T–27EAJ, 2003 WL 21517778, at *2 (M.D.Fla. May 15, 2003) (explaining that a federal agency must invoke the deliberative process privilege).

2. In relevant part, Section 5318 provides that: "The Secretary may require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation." 31 U.S.C. § 5318(g)(1).

waived." *Whitney Nat'l Bank v. Karam,* 306 F.Supp.2d 678, 682 (S.D.Tex.2004) (citations omitted).

Yet, federal regulations expressly state that the SAR privilege does not prohibit disclosure by a national bank of:

The underlying facts, transactions, and documents upon which a SAR is based, including, but not limited to, disclosures:

(i) To another financial institution, or any director, officer, employee or agent of a financial institution, for the preparation of a joint SAR; or

(ii) In connection with certain employment references or termination notices[.]

12 C.F.R. § 21.11(k)(1)(ii)(A)(2).

■ Accordingly, courts have held that the SAR privilege does not shield from discovery reports, memoranda, or underlying transactional documents generated by a bank's internal investigation procedures. *See Whitley,* 2011 WL 6202895 at *4 (explaining that internal bank reports or memoranda regarding an investigation into suspicious activity are not protected by SAR privilege (citation omitted)); *Freedman & Gersten, LLP v. Bank of Am.,* No. 09–5351(SRC)(MAS), 2010 WL 5139874, at *3 (D.N.J. Dec. 8, 2010) (finding SAR privilege does not encompass "documents and facts pertaining to the suspicious activity" that "were created in the ordinary course of business" (citations omitted)); *Weil v. Long Island Sav. Bank,* 195 F.Supp.2d 383, 389 (E.D.N.Y.2001) (explaining that "supporting documentation" is not covered by the SAR privilege); *Cotton,* 235

F.Supp.2d at 814 ("Nothing in the Act or regulations prohibits the disclosure of the underlying factual documents which may cause a bank to submit a SAR. Furthermore, those underlying documents do not become confidential by reason of being attached or described in a SAR."). *But see United States v. LaCost,* No. 10–CR–20001, 2011 WL 1542072, at *8 (C.D.Ill. Apr. 22, 2011) (concluding that "incident reports that let to the filing of a SAR and other documents related to the filing of SARs" are within the SAR privilege).

■ In arguing for a broader interpretation of the regulatory language of section 21.11(k), Wells Fargo cites to comments in the Federal Register stating that the SAR privilege applies to "material prepared by the financial institution as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not." Confidentiality of SARs, 75 Fed.Reg. 75593–01 (Dec. 3, 2010), 2010 WL 4902681.[3] And a financial institution should also "afford confidentiality to any document stating that a SAR has not been filed." *Id.* at 75595. The comments in the Federal Register underscore that "the primary purpose for clarifying the scope of the confidentiality provision is to ensure that, due to potentially serious consequences, the persons involved in and identified in the SAR cannot be notified, directly or indirectly, of the report." *Id.*[4]

### *Conclusion*

The Bank Documents can be described broadly in three categories: (1) listings of transactions or copies of certain transac-

---

**3.** It is noteworthy that the Federal Register comments cited by the bank in fact adopted the definitions of the *Whitney* and *Cotton* courts in construing the SAR confidentiality privilege as covering not only a SAR but "information that would reveal the existence of a SAR[.]" 75 Fed.Reg. 75593–01 at 75595, nn. 11 & 14.

**4.** However, the SAR privilege is not vitiated by public disclosure of the underlying transactions or prosecution of an individual who is the subject of a SAR. *See e.g., Cotton,* 235 F.Supp.2d at 814.

tional documents relating to bank accounts, some with highlighted notations; (2) internal bank emails and reports; and (3) a series of email communications between another financial institution and the bank.

 The copies of transactional documents and lists of such documents are not covered by the SAR privilege. And although some documents are a list or description of certain transactions rather than copies of the transactional documents themselves, they are facts or transactions, not internal reports or other evaluative documents. Also, even though Wells Fargo asserts that all bank transactional documents have already been provided to Receiver in discovery or obtained by Receiver via subpoena, there is no indication that the particular collection of transactional documents identified in the privilege log are in Receiver's possession. Therefore, the documents at Tab 4, Bates numbers 000026–000065 [5] and Tab 5, Bates numbers 000066–000517, including any highlighted or shaded portions of those documents, are not covered by the SAR privilege and shall be disclosed to Receiver.[6] However, the first page of Tab 4—Bates number 000025—is a cover sheet which could be considered a report of an evaluative nature intended to comply with federal reporting requirements in light of the comments stated on that page. It is covered by the SAR privilege and shall not be disclosed.

Regarding the internal documents, email, reports, and other communications, only one portion of one of those pages is covered by the SAR privilege, as it could be considered a report of an evaluative nature intended to comply with federal reporting requirements in light of the comments stated in that paragraph: the **final** paragraph at Tab 1, Bates numbers 000001–000002. A redacted version of this document, also included in Tab 1, has already been disclosed to Receiver with two paragraphs redacted. However, the **first** paragraph of the document at Tab 1, Bates number 000001 which was redacted by Wells Fargo prior to disclosure to Receiver merely describes the transactional documents reviewed and is not covered by the SAR privilege. Also, the document at Tab 3, Bates numbers 000018–000020 is not covered by the SAR privilege as it appears to be a report generated by the bank in the ordinary course of business in monitoring unusual activity.[7]

 As for the last category of documents—communications between another financial institution and the bank—the Court finds that these communications are covered by the SAR privilege as the comments on those documents, the regulatory authority cited in the communications, and the evaluative content, as a whole, reflect material that could be considered as a report of an evaluative nature intended to comply with federal reporting requirements. Therefore, Tab 2, Bates numbers 000005–000017 are covered by the SAR privilege and shall not be disclosed.[8]

---

5. Except that Wells Fargo shall redact from Tab 4, Bates numbers 000029, 000043, 000044, 000056, 000060, and 000063 the statement on line 1 of each of those documents, consistent with the ruling as to Tab 4, Bates number 000025.

6. That some of these transactional documents might have highlighting or shading on them does not make them covered by the SARs privilege.

7. Wells Fargo states that the document at Tab 3, Bates numbers 00021–00024 (a newspaper article) has been provided to Receiver. As it is already in Receiver's possession, there is no need to produce it.

8. The document at Tab 2, Bates numbers 000013–000017 is identical to the document at Tab 2, Bates numbers 000008–000012.

However, an attachment referred to at Tab 2, Bates numbers 00005 and 00007, has not been submitted for *in camera* review. If it is merely transactional data, it should be produced to Receiver as it is not covered by the SAR privilege, consistent with the ruling made above as to other Bank Documents. If Wells Fargo maintains that the attachment is covered by the SAR privilege, it shall submit the attachment and a privilege log for *in camera* review within fourteen (14) days.

Accordingly, within fourteen (14) days of this order, Wells Fargo shall disclose [9] to Receiver copies of the documents identified in the privilege log as:

(1) Tab 1, Bates numbers 000001–000004, excluding the final paragraph which has been redacted on Bates numbers 00001 and 00002;

(2) Tab 3, Bates numbers 000018–000020;

(3) Tab 4, Bates numbers 000026–000065; [10]

(4) Tab 5, Bates numbers 000066–000517, including highlighted information on Bates numbers 000234–000246; and

(5) The attachment referred to at Tab 2, Bates numbers 00005 and 00007 unless Wells Fargo submits it for *in camera* review as set forth above.

---

**9.** In case of any conflict between the findings in this order and those made during oral argument, this order controls as the comments at the hearing were only tentative rulings which have been reconsidered based upon further review of the documents and applicable case law.

**10.** Subject to the line 1 redaction permitted *supra* p. 1218 n. 5.