**Franz LESTI and Petra Richter, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**WELLS FARGO BANK NA, Defendant.**

**No. 2:11–cv–695–FtM–29DNF.**

United States District Court,
M.D. Florida,
Fort Myers Division.

Signed March 26, 2014.

---

David S. Mandel, Nina Stillman Mandel, Mandel & Mandel, LLP, Miami, FL, Cullin Avram O'Brien, Paul J. Geller, Robert Jeffrey Robbins, Stuart A. Davidson, Bailie Heikkinen, Robbins Geller Rudman & Dowd, LLP, Boca Raton, FL, Robert F. Elgidely, Genovese, Joblove & Battista, PA, Fort Lauderdale, FL, for Plaintiffs.

Amy S. Rubin, Elliot A. Hallak, Heather L. Ries, Thomas C. Allison, Fox Rothschild, LLP, West Palm Beach, FL, for Defendant.

## ORDER

DOUGLAS N. FRAZIER, United States Magistrate Judge.

This cause is before the Court on the Plaintiffs, Franz Lesti and Petra Richter's Motion to Compel Wells Fargo Bank to Produce Information Relating to Co–Conspirator Angelika Neumeier–Fuchs in Response to Plaintiffs' Document Requests and in Depositions (Doc. 160) filed on February 13, 2014. The Plaintiffs filed a Notice of Supplemental Information Regarding Their Pending Motion to Compel (Doc. 174) attaching an Authorization for Release of Bank Information, Waiver of Protections Under Florida Statute § 655.059, and Request for Books and Records Under Florida Statute § 655.059(2)(A) signed by Angelika Neumeier–Fuchs ("Fuchs"). (Doc. 174–1). The Defendant, Wells Fargo Bank, N.A. ("Wells Fargo") filed a Response (Doc. 185) on March 10, 2014. Wells Fargo also filed a Petition to Quash Subpoena (Doc. 183–2) in the Northern District of California, San Francisco Division requesting that a subpoena served on Wells Fargo in California by Plaintiffs be quashed. The Subpoena requested the same information as requested in the instant Motion to Compel filed in this Court.

■ Pursuant to Fed.R.Civ.P. 26, Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense of any party—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). The purpose of discovery is to require disclosure of relevant

information so that the resolution of the civil action is based upon a full and accurate understanding of the facts. *Anglin v. Maxim Healthcare Services, Inc.* 2009 WL 928305, *2 (M.D.Fla. April 3, 2009) (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)). When the discovery requested appears relevant on its face, then the party objecting to the discovery based upon relevance has the burden to show the requested discovery is not relevant. *Unlimited Resources, Inc. v. Deployed Resources, LLC,* 2009 WL 212188 at *3 (M.D.Fla. Jan. 29, 2009). The scope of discovery is broad, however, the information must be relevant to a claim or defense, but need not be admissible at trial. *Anglin,* 2009 WL 928305 at *2 (citations omitted).

Request for Production No. 7 provides as follows:

> All documents pertaining to Angelika Neumeier a/k/a Angelika Neumeier–Fuchs.

Wells Fargo [1] initially objected asserting that the Request was overly broad and unduly burdensome as written; the Request seeks documents that are irrelevant and immaterial to the claims and defenses raised in this action; and the Request is not reasonably calculated to lead to the discovery of admissible evidence. Wells Fargo also raises the attorney-client privilege and/or the work-product doctrine. Wells Fargo then states that "[b]y agreement of the parties, a privilege log will be produced at a later date and time insofar as the documents not being produced on the basis of attorney-client privilege and/or the work-product doctrine, upon the completion and review of the electronic data searches to be conducted by Wells Fargo once the parties reach an agreement as to the electronic search parameters." (Doc. 160, p. 4). Wells Fargo also asserts that it will not produce the documents which are exempt from disclosure pursuant to applicable law. Wells Fargo argues that this case involved one single checking account and a single money market account, both of which were closed a few months after being opened, and Wells Fargo only provided routine bank-

ing services to PCOM. Wells Fargo argues that the Plaintiffs could have taken discovery directly from Fuchs but did not. Wells Fargo also raises the Suspicious Activity Report ("SAR") Privilege.

The Plaintiffs respond that they are seeking documents relating to Wells Fargo's conduct in opening accounts for Fuchs, the sole officer of PCOM. The Plaintiffs claim that after Wells Fargo learned of the money-laundering in the PCOM accounts and decided to close those accounts, it allowed Fuchs to transfer allegedly $1 million from PCOM accounts into her own accounts. The Plaintiffs are attempting to obtain documentation as to the financial transactions involved in Fuchs' accounts to determine if the proceeds of illegal activity were involved.

■ Addressing the SAR privilege first, the Court previously stated that the SAR privilege protects against disclosure of "[a] SAR, or any information that would reveal the existence of a SAR[.]" 12 C.F.R. § 21.11(k). However, "supporting documentation" giving rise to a SAR that is generated or received in the ordinary course of business is discoverable. *Union Bank of California v. Superior Court,* 130 Cal.App.4th 378, 29 Cal. Rptr.3d 894, 901 (2005). "Thus, transactional and account documents such as wire transfers, statements, check and deposit slips are the types of documents generated in the ordinary course of business that are subject to discovery [citation omitted]. Such documents would be prepared regardless of whether a financial institution has an obligation to report suspicious activity to the federal government." *Id.* The Court followed *Cotton v. PrivateBank & Trust Co.,* 235 F.Supp.2d 809, 815 (N.D.Ill.2002) which found as follows:

> There are two types of supporting documents. The first category represents the factual documents which give rise to suspicious conduct. These are to be produced in the ordinary course of discovery because they are business records made in the ordinary course of business. The second category is documents representing drafts of SARs or other work product or privi-

---

1. With the filing of the Authorization for Release of Bank Information, Wells Fargo did not continue to assert that the information was privileged pursuant to Fla. Stat. § 655.059.

leged communications that relate to the SAR itself. These are not to be produced because they would disclose whether a SAR has been prepared or filed.

*Id.*

This Court also followed the reasoning in *Regions Bank v. Allen,* 33 So.3d 72, 76–77 (Fla. 5th DCA 2010). The court in *Regions Bank* found that

a draft SAR or internal memorandum prepared as part of a financial institution's process for complying with federal reporting requirements is generated for the specific purpose of fulfilling the institution's reporting obligation. These types of documents fall within the scope of the SAR privilege because they may reveal the contents of a SAR and disclose whether a SAR has been prepared or filed. Unlike transactional documents, which are evidence of suspicious conduct, draft SAR's and other internal memoranda or forms that are part of the process of filing SAR's are created to report suspicious conduct.

*Id.,* quoting 12 C.F.R. § 21.1(k) (2005) (internal quotation marks omitted). *See also, Union Bank of California v. Superior Court,* 29 Cal.Rptr.3d at 902.

▆▆▆ The Court determines that account information for Fuchs is relevant and appears reasonably calculated to lead to the discovery of admissible evidence. The Court will limit Request No. 7, to factual documents which may or may not give rise to suspicious conduct. If transfers occurred between the PCOM account and Fuchs' personal accounts, then that information may be relevant, and appears reasonably calculated to lead to the discovery of admissible evidence as to the claim of aiding and abetting. Although the Plaintiffs attempt to extend the meaning of Request No. 7 [2], the Court will limit it to factual documents to avoid any conflict with the SAR privilege. The Court will require Wells Fargo to produce all business records made in the ordinary course of business, in its possession, custody or control relating to Fuchs' accounts including, but not limited to, correspondence, e-mails, facsimiles, account statements, wire transfer records, cancelled checks, deposit slips, and other documents of these types related to Fuchs' accounts only. Wells Fargo shall not produce documents representing drafts of SARs or other work product or privileged communications that relate to the SAR itself or internal memorandum prepared as part of a financial institution's process for complying with federal reporting requirements. If the attorney-client privilege or the work-product doctrine applies, then Wells Fargo must produce a privilege log.

The Plaintiffs also request that the Court require Wells Fargo to provide answers to questions that occurred in depositions regarding Fuchs' accounts and activities, and direct Wells Fargo in the future not to instruct witnesses not to answer questions based on customer confidentiality. When the depositions occurred, Wells Fargo properly invoked Fla. Stat. § 655.059 to protect Fuchs' and other non-parties' confidential banking information. The Plaintiffs obtained Fuchs' waiver after the depositions were completed. The Court will not require Wells Fargo to provide answers now that a waiver has been signed by Fuchs, nor will it prohibit Wells Fargo from instructing its witnesses as it sees fit.

**IT IS HEREBY ORDERED:**

1) The Motion to Compel Wells Fargo Bank to Produce Information Relating to Co–Conspirator Angelika Neumeier–Fuchs in Response to Plaintiffs' Document Requests and in Depositions (Doc. 160) is **GRANTED IN PART AND DENIED IN PART.**

2) The Motion to Compel is **GRANTED** to the extent that Wells Fargo shall produce the documents as listed above and a privilege log, if necessary, within twenty-one (21) days from the date of this Order.

---

**2.** In the Notice of Supplemental Information (Doc. 174), the Plaintiffs attempt to expand Request No. 7 to include, "all relevant policies, procedures and internal bank documents regarding 'related accounts.'" (Doc. 174, p. 2). This information is beyond the scope of Request No. 7, and therefore, the Court will not extend Request No. 7 beyond its plain language.

3) The Motion to Compel is **DENIED** in all other respects. The Court will not award sanctions or fees.